# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY TULLIE CRITCHER, TWOANA CLARK-SHEPPARD, VICTORIA MARYNOVSKY, and PATRICIA BELBOT, individually and on behalf of other similarly situated persons,<br><br>                Plaintiffs,<br><br>   vs.<br><br>L'ORÉAL USA, INC.,<br><br>                Defendant | Case No. 1:18-cv-5639<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**Jury Demand** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

NATURE OF THE ACTION ....................................................................................1

PARTIES ....................................................................................................................5

JURISDICTION AND VENUE ................................................................................5

FACTUAL ALLEGATIONS: THE "PUMP PROBLEM" ....................................6

    A.      Products At Issue ............................................................................6

    B.      History Of The Problem: Consumer Complaints ..........................8

    C.      Other Packaging Options .............................................................12

    D.      Laboratory Testing.......................................................................14

    E.      Consumer Survey .........................................................................14

PLAINTIFFS' EXPERIENCES ..............................................................................15

    A.      Plaintiff Mary Tullie Critcher ....................................................15

    B.      Plaintiff Twoana Clark-Sheppard ..............................................15

    C.      Plaintiff Victoria Marynovsky .....................................................16

    D.      Plaintiff Patricia Belbot................................................................17

CLASS ACTION ALLEGATIONS ........................................................................17

    A.      Nationwide Class .........................................................................18

    B.      Statewide Subclasses ...................................................................18

CLAIMS FOR RELIEF ..........................................................................................22

PRAYER FOR RELIEF ..........................................................................................43

JURY TRIAL DEMANDED ...................................................................................44

## INTRODUCTION

1.     Plaintiffs Mary Tullie Critcher, Twoana Clark-Sheppard, Victoria Marynovsky, and Patricia Belbot ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant L'Oréal USA, Inc. ("Defendant" or "L'Oréal"), demanding a trial by jury. Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves which are based on personal knowledge. On behalf of themselves and the class or subclasses they seek to represent, Plaintiffs allege as follows:

## NATURE OF THE ACTION

> *"I really like this product, but when I get to the 1/2 way mark, I cant get it to come out. I have cleaned the dispenser but still i cant get anymore. I thought I could unscrew the top, but it doesnt work that way. I enjoy wearing this foundation, but cant afford to lose 1/2 a bottle everytime. do you have any suggestions?"*

*L'Oréal Visible Lift; 01/26/2011 L'Oréal website [sic].*[1]

2.     This is a consumer class action on behalf of consumers seeking redress for L'Oréal's deceptive practices in misrepresenting to consumers the usable amount of cosmetic product sold in the defective manual pumping bottles for its liquid cosmetic products ("Liquid Cosmetic Products")[2] in violation of various state consumer protection laws and common law.

3.     Defendant is a manufacturer and seller of cosmetic products including the Liquid Cosmetic Products at issue in this action. Defendant's Liquid Cosmetic Products are offered for sale to consumers throughout the United States through various large retailers and pharmacies

---

[1] Customer comments quoted throughout this Complaint have not been edited for spelling, punctuation or grammar.

[2] Including without limitation "Visible Lift Serum Absolute," "Age Perfect Eye Renewal Eye Cream," and "Revitalift Bright Reveal Brightening Day Moisturizer," which are marketed under the "L'Oréal" brand, and "Superstay Better Skin Skin-Transforming Foundation," which is marketed under the "Maybelline" brand.

including but not limited to Sephora, Walgreens, Wal-Mart, Target, Ulta, Rite-Aid, and CVS. They are also offered by these retailers on their e-commerce websites and by other online retailers such as Amazon.com, Drugstore.com, and Beauty.com.

4.     Defendant's Liquid Cosmetic Products are generally sold in containers containing one fluid ounce or less of product. Defendant packages and sells these products in containers made of glass that are sealed or otherwise designed to prevent consumers from opening them. Defendant further designed the products to be dispensed through manual pumps inserted into the sealed containers.

5.     The quantity of Liquid Cosmetic Product claimed by Defendant on the various packages is deceptive and misleading because while the containers accurately state the total amount of product contained therein, Defendant fails to disclose to consumers that they will not be able to access or use a large percentage—***in some cases more than half***—of the product purchased. This is because the pumps used to dispense these Liquid Cosmetic Products fail to dispense a quarter of the Liquid Cosmetic Products, and sometimes 50% or more, because the pumps are defective and cannot adequately and reasonably dispense viscous liquids, rendering Defendant's packaging materially misleading.

6.     To make matters worse, the containers are often glass bottles, sealed shut and are designed to *prevent* consumers from opening them, thereby thwarting consumers' access to the trapped product by any reasonable and safe means. Because some of the containers are made with opaque materials, or the viscous liquids frequently stick to the sides of the containers, it is difficult for consumers to know exactly how much, if any, Liquid Cosmetic Product remains trapped in the containers. This is further exacerbated by the inherent weight of a small, yet relatively heavy,

glass bottle, which leads consumers to believe that the weight of any stranded product is attributable instead to the bottle weight itself, and not to any product leftover.

7.      Indeed, results from Plaintiffs' independent laboratory testing of the products at issue, which utilized standard laboratory practices for measuring the volume of viscous liquids, confirm that these Liquid Cosmetic Product containers only dispense between as little as 43 percent to 81 percent of the container's advertised contents.

8.      This low dispensation rate deceives and damages consumers, who typically spend approximately $15 for the products, meaning that consumers may lose on the average approximately $7 *on each purchase* because of Defendant's defective packaging.

9.      To compound matters, viscous liquid like the makeup products at issue can be more easily and completely dispensed from containers that contain removable pumps.  In addition to removable and screw-top pumps, airless pumps are utilized by many other cosmetic manufacturers to dispense viscous liquid cosmetic products similar to that of Defendant's products.  Moreover, Defendant itself uses these more efficient packaging types with other of its products, so it obviously is familiar with their advantages.

10.     Numerous consumers have complained directly to Defendant about (i) their inability to access the Liquid Cosmetic Product, (ii) their frustration that the containers are sealed, (iii) their unsuccessful attempts to remove the pumps, and (iv) the attempts they have made to otherwise access the trapped product.  In fact, some consumers go to potentially dangerous lengths to attempt to access the trapped product.  For example, according to online complaints, consumers have tried to saw off the top of pumps, even though the containers are glass.  Others have reported using pliers or other tools not designed for such efforts.

11.     Many of the consumer complaints are posted on Defendant's own website, dating at least as far back as 8 years ago.  Defendant often responds directly to these specific complaints, thanking consumers for sharing their feedback and assuring them their comments will be "shared with our management team."

12.     Defendant nevertheless continues to sell these Liquid Cosmetic Products in sealed glass containers, sometimes coated or opaque, with non-removable and ineffective pumps in order to generate greater revenue and sales.  In addition to depriving consumers of the full value of the product they have purchased, the deceptive design of these containers causes some consumers to believe that they have used all of the product and purchase it more frequently than they otherwise would have if the full quantity of product had been dispensed.  This results in greater sales and increased profits for Defendant as consumers purchase more Liquid Cosmetic Products more frequently.  Additionally, Defendant receives payment for and profits from the sale of products that the reasonable consumer can never fully use, and is unjustly enriched in that regard.

13.     The containers, labeling and packaging for Defendant's Liquid Cosmetic Products that are marketed and sold mislead, deceive, and defraud reasonable consumers.  The deceptive manner in which these Liquid Cosmetic Products are marketed and sold further precludes consumers from making useful and accurate value comparisons between these Liquid Cosmetic Products and other similar products on the market.

14.     Had Plaintiffs known that a large percentage—***sometimes more than half***—of the Liquid Cosmetic Products they purchased from Defendant could not be reasonably accessed from the containers in which they were sold, and had Plaintiffs known there was no other reasonable means of accessing the trapped product, Plaintiffs would not have purchased Defendant's Liquid Cosmetic Products or would not have paid the price premium demanded by Defendant.

15.     Plaintiffs assert putative class action claims on behalf of themselves and all other consumers who purchased Defendant's Liquid Cosmetic Products.  They seek damages, restitution, and injunctive relief.

## PARTIES

16.     Plaintiff Mary Tullie Critcher is a citizen of Texas who resides in Dallas, Texas, and is over the age of 18.

17.     Plaintiff Twoana Clark-Sheppard is a resident of Missouri who resides in Kansas City, Missouri, and is over the age of 18.

18.     Plaintiff Victoria Marynovsky is a citizen of Florida who resides in Sunny Isles Beach, Florida and is over the age of 18.

19.     Plaintiff Patricia Belbot is a citizen of Nevada who resides in Las Vegas, Nevada, and is over the age of 18.

20.     Defendant L'Oréal is a Delaware corporation with its principal place of business at 575 Fifth Ave, New York, New York 10017.  It is a subsidiary of the French cosmetics giant L'Oréal S.A., the world's largest cosmetics company.

21.     L'Oréal is engaged in the manufacturing, packaging, advertising, and distributing of many consumer products, including the Liquid Cosmetic Products at issue here, throughout the United States.  In addition to manufacturing and distributing products using the "L'Oréal" brand, L'Oréal also manufactures and distributes products using the "Maybelline" brand, including the Liquid Cosmetic Products at issue here, throughout the United States.

## JURISDICTION AND VENUE

22.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate claims of all members of the proposed class and subclasses are in

excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Plaintiffs, as well as most members of the proposed class and subclasses, are citizens of states different from Defendant.

23. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Defendant is headquartered and from where it developed, distributed, marketed, advertised, and sold the various Liquid Cosmetic Products at issue throughout the United States, which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(1) because Defendant is headquartered in this District.

24. This Court has personal jurisdiction over the Defendant because Defendant maintains its headquarters in New York and violations occurred in New York.

## FACTUAL ALLEGATIONS: THE "PUMP PROBLEM"

**A. Products At Issue**

25. There are at least 4 products at issue in this case manufactured and marketed by Defendant during the class period, which are sold in drug stores, cosmetic stores, and other retail outlets across the United States, and internationally.

26. Two of the products are liquid foundations, "Visible Lift Serum Absolute," marketed under the L'Oréal brand, and "Superstay Better Skin Skin-Transforming Foundation," marketed under the Maybelline brand. A version of each of the products is pictured here:




27.     The two other products at issue are "Age Perfect Eye Renewal Eye Cream" and "Revitalift Bright Reveal Brightening Day Moisturizer," both of which are marketed under the L'Oréal brand and are pictured here:




28.     According to the labels of the two liquid foundation products and the "Revitalift Bright Reveal Brightening Day Moisturizer," the containers contain one fluid ounce, or 30 milliliters, of product.  According to the label of the "Age Perfect Eye Renewal Eye Cream," the container contains .5 fluid ounce, or 15 milliliters, of eye cream.  The products are sealed in glass containers. Because some of the containers are opaque (such as the Revitalift moisturizer, which is painted white), or the viscous liquids frequently stick to the sides of the containers, it is difficult for consumers to know exactly how much, if any, Liquid Cosmetic Product remains trapped in the containers. The liquids are dispensed through a manual pump which cannot be screwed off or otherwise removed.

**B.      History Of The Problem: Consumer Complaints**

29.     Defendant has known about the problems with its defective pumps for years. Numerous consumers have lodged complaints with Defendant dating back at least as far as ***eight years ago***.  Defendant has sometimes acknowledged these complaints and has even responded to them, thanking consumers for their thoughts and promising to share customer feedback with management and others within the company.

30.     Below is a mere sampling of online consumer complaints, most of which were directly received by Defendant on its websites, involving the Liquid Cosmetic Products:

<u>**L'Oréal Visible Lift Serum Absolute Foundation**</u>

a.      "I have been buying Loreal makeup for many years and I don't have any complaints about the make up-I actually prefer it, The complaint I have is with the new bottle for Visible Lift. You can NOT take the top off! When the bottle is close to empty and the makeup is just low enough for the pump not to reach-you cant get anymore makeup out. If I am going to have to pay $$$ for makeup I would like to be able to use it all. = (" 1MadBuyer from San Antonio, TX, posted 8 years ago on Defendant's website.

b.  "This is a fabulous foundation, but all of a sudden - the pump stops working!  How ridiculous. I'd transfer the foundation to an airless pump, but the foundation is way to thick to get it out of the bottle. I've read that this happens with this foundation, but just thought .. Oh, that person got a bad one. Um, nooooooo - LOREAL - FIX THE FOUNDATION PUMP!" MonicaP from San Diego, posted 5 months ago on Defendant's website.

c.  "Love the foundation; dislike the pump. I'd give this five stars for coverage and texture, but I'll knock it down to four for consistently having to wrench off the pump at the 25% level and dig out the remainder with cotton swabs, making a mess in the process. Seriously, L'Oreal, if you can produce other products in bottles that don't waste so much product, why can't you fix this one? We've been begging for years; help us out!" Almost57 from Sacramento, CA, posted 4 months ago on Defendant's website.

d.  "I bought the new Loreal Visible Lift Foundation and loved it until I got 2/3 through the bottle and the pump top stopped working. Now I cannot access the remaining makeup from the bottle and the cap is not a screw top to [sic] it's impossible to get foundation out of the bottle even though there's a lot left. It's a very poor design. I liked the idea of the pump until it stopped working. I won't buy the product again with this top. . . ." catessman posted 7 years ago on Complaints Board website.

e.  "Bottle is fitted with a pump dispenser that does not pump anything out when it gets low. Cap does not skrew off to allow you to get to it that way. So, for the amount this costs I expect to be able to use it ALL! Not three quarters of it." madesjarlais posted 7 years ago on MeasuredUp website.

f.  "Love product.....but 1/3 of it won't pump out. Manufacturer needs to redesign pump so it will actually pump out. Bottle is designed where the top won't come off. If you want to actually use all the product that you paid for, you have to pry the top off. A lot of people just throw it away and buy more which makes more profit for L'Oreal. Refuse to buy this product until pump actually works." Ms. Urban posted 1 year ago on Amazon website.

g.  "This is a great makeup but the bottle is terrible!! I have bought 2 and I will try one more but if the pump isn't better I will look for a new brand. I've lost half of each of the first

ones and can't afford to pay the price to toss it in the garbage. Trudeeblue posted 7 years ago on Defendant's website

h.  "I really like this product, but when I get to the 1/2 way mark, I cant get it to come out. I have cleaned the dispenser but still i cant get anymore. I thought I could unscrew the top, but it doesnt work that way. I enjoy wearing this foundation, but cant afford to lose 1/2 a bottle everytime. do you have any suggestions?" Anonymous posted 7 years ago on Defendant's website.

## **Maybelline Super Stay Better Skin Foundation**

a.  "GOOD, BUT NEEDS BETTER PACKAGING. I like this foundation, but it needs a better packaging. I'm the type to finish my things til the last drop and maybe because the foundation is on the thicker side, you can't really see when the foundation is about to be finished, and to top it off, extremely hard to remove the pump." suheid from Long Beach, CA posted 1 year ago on Defendant's Maybelline website.

b.  "the pump stopped working after the third day....threw it out." Donna M. Coriano posted 8 months ago on Amazon's website.

## **L'Oréal RevitaLift Bright Reveal Brightening Day Moisturizer**

a.  "Bottle broken. :(. I only was able to use the Bright Reveal moisturizer a few times before the pump stopped working. But the few times that I did it was nice. I noticed it was slightly pearlized which is what I'm guessing is supposed to give your skin some radiance. I don't plan on repurchasing this lotion, disappointed that the bottle broke so soon and am glad I didn't spend my money on it or it would have been returned. Seems like a good basic daytime lotion. I have dry skin and h to use had to use a lot to make my skin feel comfortable. Also I prefer my daytime lotion to have a higher SPF. Won't purchase in the future, but I did LOVE some of the other products in this line." Suzanne posted 2 years ago on Defendant's website.

b.  "Great formula; needs better packaging. I've pruchased this twice so far and really like the product. It smells nice, absorbs fast, and protects from the sun well. My only complaint is the package: when the pump stops pumping,

there is still a lot of product remaining in the bottle and it's very hard to get the rest out. This seems wasteful, and I want to use every bit of what I've purchased. A wider bottle neck or a squeezable tube would make it easier to completely empty the package and use all of the product." SDCA posted 1 year ago on Defendant's website.

### **L'Oréal Age Perfect Eye Renewal Eye Cream**

a.  "The cream in this product is nice but I would never buy it again because the pump is faulty. It stops working at about half full. So you waste 50% of product. I want a refund! do not buy this." Lauraindc posted 2 years ago on Defendant's website.

b.  "The bottle needs to be redesigned! This is the 2nd time I have bought this product. And yet again I cannot get the bottle 1/3 of the product to dispense. The pump stops working. I have had the bottle turned upside down for 2 days and the lotion will not drop. I will not buy this product again - you need to change the design." Sue952 from Surrey, BC, Canada, posted 3 months ago on Defendant's website.

31.     Given the multitude of complaints, Defendant is undoubtedly aware of the defective closed pump design.  Indeed, Defendant sometimes specifically responds to complaints on its own website:

a.  Complaint from "MiamimomFort Lauderdale, FL" and response from L'Oréal:

**Posted**: 07/18/2014 Reviewing: Natural Buff

Love the product Hate the pump- can't get last 1/4 out of bottle Bought 3 bottles - same problem Loved the previous bottle with brush- bring it back Moved on to another brand because of this

Response from L'Oréal Paris USA



Customer Care, L'Oréal Paris USA 07/21/2014

Thank you for taking the time to share your feedback with us. We are always looking for ways to improve our products and services. Your comments will be passed along to others in the company. In the future you may want to try our new product Visible Lift Blur Foundation: http://bit.ly/1k8v3qI

b.   Complaint from "Vandeven mConroe, TX" and response from L'Oréal:

**Posted**: 09/01/2014 Reviewing: Creamy Natural

Great product but you can only use 65% or 75% of the product. The rest is wasted as the pump will not distribute the material that remains. I guess Loreal can sell more product that way but it's frustrating to pay top dollar for a good product only to be able to access a portion of what you bought. Bottom line, good product, poorly designed dispenser.

Response from L'Oréal Paris USA



Customer Care, L'Oréal Paris USA 09/08/2014

Thank you for sharing your thoughts with us. We are always looking for ways to improve our products and services. Your comments will be shared with our management team.

## C.   Other Packaging Options

32.   There is no equitable justification for Defendant's products to suffer from these defects or for Defendant to deceive and mislead consumers.  Other liquid cosmetic products (including other products marketed and sold by Defendant itself) similar to those at issue here are marketed and sold in containers that either (a) have screw-off lids, (b) use removable (not closed) pumps, (c) use airless pumps, or (d) utilize squeeze tubes—all of which allow most, if not all, of the liquid cosmetic product to be dispensed.  Regarding airless pumps, they typically dispense at least 99% of liquid cosmetics similar to Defendant's Liquid Cosmetic Products.  Many cosmetic manufacturers (including Defendant) use airless pumps to dispense liquid foundations and other

liquid cosmetic products. For example, Arbonne uses an airless pump to dispense its "Perfecting Liquid Foundation," a similar product:



33.     The use of airless pumps is in no way limited to expensive cosmetic products. One of the least expensive lines of cosmetics sold at Target stores, e.l.f. Cosmetics, also makes use of airless pumps to dispense its primer and foundation—both of which are sold for approximately $6.00 each:



**D.  Laboratory Testing**

34.     Independent laboratory Exponent tested the dispensing rates of Defendant's products at issue, consistent with standard laboratory practices for measuring the volume of viscous liquids. Exponent's testing reflects and confirms what consumers have already reported: the closed pump packaging approach results in significant amounts of Defendant's Liquid Cosmetic Products remaining in their containers and unavailable for use. For some products, the pump is only capable of dispensing 43% of the product, ***stranding well over half of the product in the container***.

35.     The results from the laboratory testing for the Liquid Cosmetic Products at issue were as follows:

| PRODUCT | PERCENTAGE OF LABELED VOLUME ACTUALLY DISPENSED |
|---|---|
| L'Oréal Age Perfect Eye Renewal Eye Cream | 43% |
| L'Oréal Revitalift Bright Reveal Brightening Day Moisturizer | 62% |
| Maybelline Superstay Better Skin Skin-Transforming Foundation | 77% |
| L'Oréal Visible Lift Serum Absolute | 81% |

**E.  Consumer Survey**

36.     Plaintiffs also commissioned a national consumer survey to assess consumers' expectations regarding the amount of liquid cosmetic product that should be dispensed from closed pump containers. Of the more than 750 consumers who were surveyed, 74% expected to receive and use the full labeled amount on the bottle.

37.     In addition, consumers were told to assume that only 70% of a liquid cosmetic could be dispensed from a closed pump container and were asked to provide comments in response to

that proposition. Nearly three-quarters (72%) of the comments were negative or extremely negative. The hundreds of negative comments included words such as "unethical," "waste," "unfair," "rip-off," "sucks" and "cheat."

## PLAINTIFFS' EXPERIENCES

### A.    Plaintiff Mary Tullie Critcher

38.    On or about June 2016, Plaintiff Critcher purchased Visible Lift Serum Absolute and paid approximately $13 for the product.

39.    Although she attempted to do so, Critcher was unable to use all of the liquid foundation purchased because it could not be completely dispensed from its container and Critcher was unable to use any other reasonable means to access the remaining product for use.

40.    Frustrated with her experience, on July 9, 2016 Critcher posted a complaint where she stated, in part, "I tried to get the top off so I could use even tho [*sic*] the pump does not work. No way to get it off. Very disappointed!!"

41.    Assuming the first container had been uniquely defective (*i.e.* a lemon), Critcher purchased the same product again in the Fall of 2017—this time at a store in Dallas, for approximately $13.  The second bottle also stopped dispensing leaving a significant amount of product stranded.

42.    Although she attempted to do so, Critcher was unable to use all of the liquid foundation purchased from the second container because it could not be completely dispensed and Critcher was unable to use any other reasonable means to access the remaining product for use.

### B.    Plaintiff Twoana Clark-Sheppard

43.    In late 2016, Plaintiff Clark-Sheppard purchased Visible Lift Serum Absolute at a retail store in Kansas for approximately $13.

44.     Although she attempted to do so, Clark-Sheppard was unable to use nearly half of the liquid foundation purchased because it could not be completely dispensed from its container and Clark-Sheppard was unable to use any other reasonable means to access the remaining product for use. Out of desperation, she even attempted to open the glass container with pliers, but that was unsuccessful.

**C.     Plaintiff Victoria Marynovsky**

45.     On or about Thanksgiving 2017, Plaintiff Marynovsky purchased Age Perfect Eye Renewal Cream from a retail store in Miami, paying approximately $20 for the product.

46.     Sometime near the end of 2017, Marynovsky purchased a second container of the same product, at the same location and for the same price.

47.     In approximately early February 2018, Marynovsky purchased a third container of the same product, this time for approximately $15.

48.     Although she attempted to do so, Marynovsky was unable to use all of the eye cream purchased because it could not be completely dispensed from its containers and Marynovsky was unable to use any other reasonable means to access the remaining product for use.

49.     Frustrated with her experience, on February 15, 2018 Marynovsky posted a complaint where she stated, in part, "[t]he pump doesn't work. I like this product but last 2 times purchased it [*sic*] and the pump didn't work. Waste of money. Also pump stops working and half of the bottle is waisted [*sic*]. Every time sane [*sic*] problem. Very disappointing".  Marynovsky also called the L'Oréal toll free number for consumers. While she was not able to get through to a person, she left her complaint on an automated answering service. To date, Marynovsky has not received a response to either her complaint on the Amazon website or the complaint that she called in to Defendant.

### D.  Plaintiff Patricia Belbot

50.  In 2017 and 2018, Plaintiff Belbot purchased several containers of Visible Lift Serum Absolute from a retail store in Las Vegas and paid approximately $13 for the product each time she purchased it.

51.  Although she attempted to do so, Belbot was unable to use all of the liquid foundation purchased each time she bought the product because it could not be completely dispensed from the containers and Belbot was unable to use any other reasonable means to access the remaining product for use, including trying to pull off the pump.

52.  Frustrated with her experience, on February 7, 2018 she posted a complaint on Defendant's website where she stated: "3 bottles that are about 1/3 stiff [*sic*] full and can NOT get the pump to produce anymore of the product!!!" Belbot provided her personal contact information to Defendant on the website but she never heard from Defendant regarding her complaint.

53.  Had Plaintiffs known that they would not be able to use a material proportion of the Liquid Cosmetic Products they purchased because the product could not be dispensed from the containers in which they were sold in, and had Plaintiffs known there was no other reasonable means of accessing the trapped product, Plaintiffs would not have purchased Defendant's Liquid Cosmetic Products and/or would not have paid the price premium demanded by Defendant for the products.

### CLASS ACTION ALLEGATIONS

54.  Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Nationwide Class and Statewide Subclasses, as defined below.

**A.    Nationwide Class**

55.    Plaintiffs bring their N.Y. GBL §§349-350, declaratory relief, breach of implied warranty, negligent misrepresentation, and unjust enrichment/quantum meruit (Counts I, II, and XIII-XI) on behalf of a proposed nationwide class ("Nationwide Class"), defined as follows:

> *All persons who purchased one or more Liquid Cosmetic Products sold by Defendant in the United States.*[3]

**B.    Statewide Subclasses**

56.    Additionally, and/or in the alternative, Plaintiffs also bring their state consumer protection claims on behalf of separate statewide subclasses of the following states: (a) Florida; (b) Kansas; (c) Nevada; (d) Missouri; and (e) Texas.  Each proposed statewide subclass ("Statewide Subclass") is defined as follows:

> *All natural persons who are residents of [STATE] and purchased one or more Liquid Cosmetic Products sold by Defendant.*

57.    Plaintiffs also bring their Counts III-VII, X, and XI under their own respective states' laws, separately on behalf of each of the Statewide Subclasses, additionally and/or in the alternative to bringing those claims on behalf of the Nationwide Class.

58.    Except where otherwise noted, "Class members" shall refer to members of the Nationwide Class and each of the Statewide Subclasses.  Excluded from the Nationwide Class and the Statewide Subclasses are Defendant and its current employees, as well as the Court and its personnel presiding over this action.

59.    This action has been brought and may properly be maintained as a class action against L'Oréal pursuant to the provisions of Federal Rule of Civil Procedure 23.

---

[3] The "Class Period" for each claim is provisionally intended to be the respective statute of limitations for each claim, with Plaintiffs reserving the right to invoke the equitable tolling doctrine based on the discovery rule or other bases as discovery and the case progresses.

60.     **Numerosity**: The precise number of members of the proposed class is unknown to Plaintiffs at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Defendant's Liquid Cosmetic Products have been and are sold throughout the United States through numerous retail outlets including Sephora, Wal-Mart, Target, Walgreens, Ulta, Rite-Aid, and CVS during the Class Period. Defendant's Liquid Cosmetic Products also have been offered and are offered online by these retailers and by other online retailers such as Amazon.com, Drugstore.com and Beauty.com during the Class Period. Plaintiffs believe, based on information and belief and publicly available sales figures, that Class members number in the hundreds of thousands, if not millions. Class members may be notified of the pendency of this action by published notice, sales records, or by other alternative means and may be identified through the sale and distribution records of Defendant and third-party retailers and vendors.

61.     **Commonality**: Numerous questions of law or fact are common to the claims of Plaintiffs and members of the proposed Class.[4] These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

a.      Whether the Liquid Cosmetic Products marketed and sold by Defendant are made, constructed, packaged, labeled, and filled so as to mislead, deceive, and defraud reasonable consumers including Plaintiffs and Class members.

b.      Whether the Liquid Cosmetic Products marketed and sold by Defendant are defectively designed and/or manufactured in a manner likely to deceive reasonable consumers including Plaintiffs and Class members.

---

[4] "Class" refers to and includes each Statewide Subclass pled herein unless otherwise stated.

c. Whether the manner in which these Liquid Cosmetic Products are marketed and sold prohibits consumers, including Plaintiffs and Class members, from making useful and accurate value comparisons between Defendant's Liquid Cosmetic Products and other similar products on the market.

d. Whether Defendant's conduct violates the relevant state consumer protection statutes.

e. Whether Plaintiffs and the other Class members were injured by Defendant's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

f. Whether Plaintiffs and the other Class members are entitled to injunctive relief.

62. **Typicality**: The claims of the named Plaintiffs are typical of the claims of the proposed Class in that the named Plaintiffs purchased one or more of Defendant's Liquid Cosmetic Products during the Class Period in a typical consumer setting and sustained damages as a result of Defendant's wrongful conduct. Plaintiffs purchased Defendant's Liquid Cosmetic Products in containers that were made, constructed, packaged, labeled, marketed and filled so as to mislead, deceive, and defraud reasonable consumers including Plaintiffs.

63. **Adequate Representation**: Plaintiffs will fairly and adequately represent the interests of the Class in that they are typical consumers of Defendant's Liquid Cosmetic Products and have no conflicts with any other Class members. Plaintiffs have retained competent counsel experienced in prosecuting complex class actions, and they will vigorously litigate this class action.

64.     **Predominance and Superiority**: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant. Additionally, given the modest amount of damages sustained by any individual Class member, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Defendant's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

65.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendant.

66.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

67.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as L'Oréal has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

68.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

69.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a classwide basis.

**CLAIMS FOR RELIEF**

**COUNT I**
**Violations of New York's Consumer Protection Statute**
**N.Y. Gen. Bus. Law § 349**
**On behalf of Plaintiffs and the Nationwide Class**

70.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

71.     New York General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

72.     Defendant controlled the design, manufacturing, marketing, and sales of the Liquid Cosmetic Products from its headquarters in the State of New York.

73.     Plaintiffs, Class members, and Defendant are "persons," within the meaning of Section 349.

74. The Liquid Cosmetic Products were directly offered to the public for sale and, thus, were sold in the "conduct of any business, trade or commerce" within the meaning of Section 349.

75. Defendant engaged in material, deceptive, consumer-oriented acts in the conduct of its business in this state that injured Plaintiffs and the Class.

76. The conduct of Defendant, as alleged herein, constitutes an unlawful practice that occurred in connection with the conduct of any business, trade or commerce, within the meaning of Section 349.

77. Defendant's deceptive omissions, concealment and suppression of material facts, as described within, violated Section 349.

78. Defendant, prior to and at the time Plaintiffs and Class members decided to purchase Liquid Cosmetic Products, knew and had knowledge and information that the products' packaging was defective. Nonetheless, Defendant represented that its Liquid Cosmetic Products contained specified amounts of usable product to consumers.

79. Defendant also knew that such defectiveness if disclosed, would reduce the demand by class members to purchase the Liquid Cosmetic Products. Defendant knew that reasonable consumers, like those in the Class, would want to know about the defective packaging when deciding whether or not to the purchase the Liquid Cosmetic Products. By concealing and suppressing that information, Defendant denied consumers in the Class the ability to make a rational and informed purchasing decision as to the purchase of the Liquid Cosmetic Products.

80. Facts regarding the defective packaging were within the exclusive control of Defendant and unable to be otherwise acquired by Plaintiffs and Class members prior to purchasing the Liquid Cosmetic Products, yet were intentionally withheld and concealed by Defendant so not to disrupt sales.

81. Defendant's acts and practices alleged herein were intended to and did result in the sale of Liquid Cosmetic Products, in violation of Section 349, which Defendant benefitted from financially. By and through its misrepresentations and omissions, Defendant intended that the public, including Plaintiffs and Class members, would remain unaware of the material facts described above.

82. Reasonable consumers would have wanted to know the facts pertaining to the packaging of the Liquid Cosmetic Products before making their decision to purchase. Plaintiffs and Class members were induced to purchase the Liquid Cosmetic Products based on Defendant's omissions of material fact.

83. Had Plaintiffs and Class members known that Defendant's packaging was defective, they would not have purchased the product, would have paid less, or otherwise acted differently. A causal nexus between Defendant's conduct and Class members' injuries exists because, but for Defendant's misrepresentations and omissions of material facts, Plaintiffs and Class members would not have purchased the products or they otherwise would have acted differently.

84. As described above, Defendant's Liquid Cosmetic Product containers are constructed and filled so as to facilitate the perpetration of deception or fraud. Defendant's construction and fill of the cosmetic containers used in its Liquid Cosmetic Products facilitates the perpetration of deception and fraud and constitutes a violation of GBL § 349.

85. As a direct and proximate cause of Defendant's omissions, which constitute deceptive trade practices and/or consumer fraud, as herein alleged, Plaintiffs and Class members have been damaged and suffered losses, thereby entitling them to recover compensatory damages, restitution, disgorgement, refunds of moneys, interest, reasonable attorneys' fees, and the costs of

prosecuting this class action, as well as any and all other relief that may be available at law or equity

86.     Plaintiffs and Class Members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## COUNT II
**Violations of New York's Consumer Protection Statute**
**N.Y. Gen. Bus. Law § 350**
**On behalf of Plaintiffs and the Nationwide Class**

87.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

88.     New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

89.     New York General Business Law § 350a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or the kind, character, terms or conditions of any employment opportunity if such advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . . ."

90.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning the Liquid Cosmetic Products, as well as material omissions.

91.     Plaintiffs have been injured inasmuch as the Liquid Cosmetic Products failed to dispense a material amount of product because of the defective pump and because they paid a premium for products that are—contrary to Defendant's representations—not reliable.  Plaintiffs further incurred monetary loss in replacing the unused product after the pump defect occurred.

92.     Defendant's advertising, packaging, and product labeling, induced Plaintiffs and Class members to buy the Liquid Cosmetic Products.

93.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

94.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

95.     Defendant made the material misrepresentations about the consumable amount of product in its packages and omissions described in this Complaint in Defendant's advertising and on the Liquid Cosmetic Products' packaging and labeling.

96.     Defendant's material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Liquid Cosmetic Products were exposed to Defendant's material misrepresentations and omissions.

97.     As a result of Defendant's "unlawful" deceptive acts and practices, Plaintiffs and Class members are entitled to monetary, compensatory, treble, and punitive damages, injunctive relief, restitution, disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT III
### Violations of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*
### On Behalf of Plaintiff Marynovsky and the Florida Subclass

98.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

99.     This claim, which asserts violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA"), is asserted against Defendant based on its conduct described above.

100.    The express purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2).

101.    Plaintiff Marynovsky and Florida Subclass members, are "consumers" as defined by Fla. Stat. §501.203.

102.    The Liquid Cosmetic Products are goods, services, and/or things of value within the meaning of FDUTPA.

103.    Defendant engaged in trade or commerce within the meaning of the FDUTPA in Florida.

104.    Fla. Stat. §501.204(1) declares as unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

105.    Defendant violated FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

106.    Defendant made misrepresentations about the consumable amount of product in its packages and omitted material information concerning its products' packaging defects and engaged in unconscionable, unfair, and/or deceptive acts by failing to disclose to Marynovsky and Florida Subclass these defects, which was revealed to Plaintiffs only after purchasing of the products.

107.    Defendant, prior to and at the time Plaintiff Marynovsky and Florida Subclass members decided to purchase the Liquid Cosmetic Products, knew and had knowledge and information that the packaging was defective and that its representations were deceptive.

108. Defendant also knew that such defect, if disclosed, would negatively affect the demand that class members had for the Liquid Cosmetic Products. Defendant knew that reasonable consumers, like those in the Class, would want to know about the defect when deciding whether to purchase the Liquid Cosmetic Products. By concealing and suppressing that information, Defendant denied consumers in the Class the ability to make a rational and informed purchasing decision.

109. Facts regarding the defect were within the exclusive control of Defendant and unable to be otherwise acquired by Plaintiff Marynovsky and Florida Subclass members prior to the purchase, yet were intentionally withheld and concealed by Defendant so not to disrupt sales.

110. Defendant's acts and practices alleged herein were intended to and did result in the sale of Liquid Cosmetic Products, in violation of §501.204(1) of the FDUTPTA, which Defendant benefitted from financially. By and through its omissions, Defendant intended that the public, Plaintiff Marynovsky and Florida Subclass, would remain unaware of the defects described above.

111. Had Plaintiff Marynovsky and Florida Subclass known of the defects, they would not have purchased the Liquid Cosmetic Products or otherwise would have acted differently. A causal nexus between Defendant's conduct and Class members' injuries exists because, but for Defendant's omissions, Plaintiff Marynovsky and Florida Subclass members would not have purchased the Liquid Cosmetic Products or otherwise would have acted differently.

112. As a direct result of Defendant's actions and omissions: Plaintiff Marynovsky and Florida Subclass members did not obtain the value of the merchandise and/or services for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make an informed and reasoned purchasing decision.

113.     Defendant's concealment constitutes unconscionable commercial practices, deception, false pretenses, the knowing concealment, suppression, or omissions of material facts with the intent that others would rely on such concealment, suppression, or omission in connection with the purchase of the Liquid Cosmetic Products in violation of FDUTPA, Fla. Stat. § 501.201, *et. seq.* Through its uniform concealment and suppression, Defendant engaged in deceptive conduct which created a likelihood of confusion or misunderstanding on the part of Plaintiff Marynovsky and Florida Subclass members.

114.     As a direct and proximate cause of Defendant's omissions, which constitute deceptive trade practices and/or consumer fraud, as herein alleged, Plaintiff Marynovsky and Florida Subclass members have been damaged and suffered ascertainable losses, thereby entitling them to recover "actual damages, plus attorney's fees and court costs" pursuant to FDUTPA §501.211(2).

115.     In addition to their actual monetary damages, Plaintiff Marynovsky and Florida Subclass are also entitled, pursuant to Fla. Stat. § 501.211(1), to injunctive and declaratory relief.

**COUNT IV**
**Violations of the Kansas Consumer Protection Act**
**K.S.A. §§ 50-623,** *et seq.*
**On behalf of Plaintiff Clark-Sheppard and the Kansas Subclass**

116.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

117.     The Kansas Consumer Protection Act, K.S.A. §§ 50-623, *et seq.* is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

118.     The acts and practices described herein are "consumer transactions" as defined by K.S.A. § 50-624(c).

119.     Defendant is a "supplier" as defined by K.S.A. § 50-624(l).

120.     The defective nature of Defendant's pump dispensers for its Liquid Cosmetic Products was a material fact.

121.     Defendant operated in Kansas and engaged in acts and practices in connection with consumer transactions in violation of K.S.A. § 50-626, including but not limited to the following:

a.      Making representations, knowingly or with reason to know, that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

b.      Making representations, knowingly or with reason to know, that, as a supplier, it has a sponsorship, approval, status, affiliation, or connection that it does not have;

c.      Making representations, knowingly or with reason to know, that property or services are of a particular standard, quality, grade, style, or model, when they are of another which differs materially from the representation;

d.      Making representations, knowingly or with reason to know, that property or services has uses, benefits or characteristics without relying upon or possessing a reasonable basis for making such representations;

e.      Making representations, knowingly or with reason to know, that use, benefit, or characteristic of property or services has been proven or otherwise substantiated without relying upon or possessing the type of proof or substantiation represented to exist; and

f.      Willfully using, in any oral or written representations, exaggeration, falsehood, innuendo, or ambiguity as to a material fact.

122.     Defendant engaged in acts and practices in connection with consumer transactions in violation of K.S.A. § 50-627, including but not limited to the following:

a. Entering into a consumer transaction knowing or with reason to know that Plaintiff Clark-Sheppard and Kansas Subclass Members were unable to receive a material benefit from the subject of the transaction; and

b. Making misleading statements on which Plaintiff Clark-Sheppard and Kansas Subclass Members were likely to rely to their detriment.

123. Plaintiff Clark-Sheppard and Kansas Subclass Members have suffered a loss and incurred damages as a direct result of Defendant's deceptive and/or unconscionable acts and practice.

124. Pursuant to K.S.A. § 50-634 and 50-636, Plaintiff and Kansas Subclass Members are thus entitled to damages, civil penalties, as well as costs and legal fees.

125. In addition, for the benefit of the general public, Plaintiff Clark-Sheppard and Kansas Subclass Members are entitled to an injunction and declaratory relief in order to prevent Defendant from continuing its practices of violating the Kansas Consumer Protection Act by engaging in the acts and practices described herein.

## COUNT V
### Violations of the Missouri Merchandising Practices Act ("MMPA")
### Mo. Rev. Stat. §§ 407.010, *et seq.*
### On behalf of Plaintiff Clark-Sheppard and the Missouri Subclass

126. Plaintiffs hereby incorporate by reference the factual allegations contained herein.

127. The MMPA provides that, "[t]he act use, or employment by ant person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement if any merchandise . . . is declared to be an unlawful practice."  Mo. Rev. Stat. § 407.020.1.

128. The enabling regulations for the MMPA define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. 15 Mo. C.S.R. § 60-8.

129. Under the MMPA, "merchandise" is defined broadly to include "any objects . . . or services." Mo. Rev. Stat. § 407.020.4.

130. The MMPA authorizes private cause of actions and class actions. Mo. Rev. Stat. § 407.25.1-2.

131. Plaintiff Clark-Sheppard and Missouri Subclass members purchased "merchandise" in "trade" or "commerce" as meant by Mo. Rev. Stat. § 407.010 when they purchased Defendant's goods and services for personal, family, and/or household purposes.

132. Defendant's conduct, described above, in purposefully marketing and selling the Liquid Cosmetic Products with defective pump dispensers, was unfair and deceptive.

133. When Defendant marketed and sold the Liquid Cosmetic Products with the defective pump dispensers, it misrepresented the consumable amount of the product and omitted material facts from Plaintiff Clark-Sheppard and Missouri Subclass Members, including the presence of the defective pump dispensers and the fact that consumers could not access and use all of the product.

134. Defendant's omission was material and deceptive. Reasonable consumers consider the dispensing capabilities of the products which they purchase to be a material aspect of their decision whether to buy a given cosmetic product.

135. Defendant's conduct was also an unfair practice that injured Plaintiffs and Class members.

136.    Plaintiff Clark-Sheppard and Missouri Subclass members purchased the Liquid Cosmetic Products from Defendant primarily for personal use.

137.    Defendant's business practices are unscrupulous, unethical, and substantially injurious to consumers.

138.    As a result of Defendant violating the MMPA, Plaintiff Clark-Sheppard and Missouri Subclass members sustained an ascertainable loss of money when they overpaid for Defendant's products and lost value as a result of the defective pump dispenser.

139.    Defendant's violations of the MMPA were willful and knowing.

140.    Plaintiff Clark-Sheppard and Missouri Subclass Members seek relief under Mo. Rev. Stat. § 407.025, including, but not limited to, injunctive and declaratory relief, actual damages, punitive damages, and attorneys' fees and costs.

## COUNT VI
### Violations of the Texas Deceptive Trade Practices Act
### Tex. Bus. & Com. Code § 17.41, *et seq.*
### On behalf of Plaintiff Critcher and the Texas Subclass

141.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

142.    This claim, which asserts violations of the Texas Deceptive Trade Practices-Consumer Protection Act (the "TDTPA"), TEX. BUS. & COM. CODE § 17.41 *et seq.,* is asserted against Defendant based on its conduct described above.

143.    Plaintiff Critcher, Texas Subclass members, and Defendant are "persons," within the meaning of § 17.45(3) of the TDPTA.

144.    Plaintiff Critcher and Texas Subclass members are "consumers" within the meaning of § 17.45(4) of the TDPTA who were exposed to Defendant's conduct and omissions.

145.    The Liquid Cosmetic Products were directly offered to the public for sale and, thus, were "goods" or "services," within the meaning of §§ 17.45(1), (2) of the TDPTA.

146.     Defendant's acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

147.     The conduct of Defendant, as alleged herein, constitutes false, misleading, and/or deceptive acts or practices in the conduct of trade or commerce, within the meaning of § 17.46(a) of the TDTPA, which were relied on by Plaintiff Critcher and Texas Subclass members to their detriment.

148.     Section 17.46(b)(24) of the TDTPA specifically prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

149.     Section 17.46(b)(9) of the TDTPA specifically prohibits "advertising goods or services with intent not to sell them as advertised."

150.     Defendant's misrepresentations about the consumable amount of its products and failure to disclose information concerning the products' defects which was known to Defendant was intended to induce Plaintiff Critcher and Texas Subclass members into a transaction which they would not have entered had the information been disclosed, as described herein, and violated the TDTPA.

151.     Defendant, prior to and at the time Plaintiff Critcher and Texas Subclass decided to purchase Liquid Cosmetic Products, knew and had knowledge and information that the products' packaging suffered from defects.

152.     Defendant also knew that such defects, if disclosed, would negatively affect the demand class members had to purchase the Liquid Cosmetic Products. Defendant knew that reasonable consumers, like those in the Class, would want to know about the defects when deciding

whether or not to purchase the Liquid Cosmetic Products. By concealing and suppressing that information, Defendant denied consumers in the Class the ability to make rational and informed purchasing decisions.

153. Defendant's acts and practices alleged herein were intended to and did result in the sale of Liquid Cosmetic Products, in violation §§ 17.46(b)(9), (24) of the TDTPA, which Defendant benefitted financially from. By and through its misrepresentations and omissions, Defendant intended that the public, including Plaintiff Clark-Sheppard and Missouri Subclass members, would remain unaware of the material facts described above.

154. Defendant concealed, suppressed, and omitted material facts with intent that others act upon such concealment, suppression, and omission, in connection with the sale or advertisement of the Liquid Cosmetic Products. By way of the foregoing, Defendant has "knowingly" and "intentionally" violated the TDPTA. TEX. BUS. & COM. CODE §§ 17.45(9), (13).

155. The TDTPA is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. TEX. BUS. & COM. CODE § 17.43.

156. Under § 17.50 of the TDPTA, Plaintiff Critcher and Texas Subclass members have standing to pursue this claim at least because Defendant's false, misleading, or deceptive act was a producing cause of Plaintiff Critcher and Texas Subclass members' damages or because Defendant's unconscionable action or course of action was a producing cause of Plaintiff Critcher and Texas Subclass members' damages.

157.    Defendant's conduct, as alleged herein, constitutes false, misleading, and/or deceptive acts or practices in the conduct of trade or commerce and is a producing cause of Plaintiff Critcher and Texas Subclass members' damages.  Plaintiff Critcher and Texas Subclass members have been damaged and suffered ascertainable losses, thereby entitling them to recover compensatory damages, including but not limited to mental anguish, refunds of moneys, interest, treble damages, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, and/or all other relief that may be available at law or equity.

158.    Plaintiff Critcher and Texas Subclass members also seek appropriate equitable relief, including an order requiring Defendant to adequately disclose and remediate the defect plaguing its Liquid Cosmetic Products, and an order enjoining Defendant from incorporating the defect from its products in the future.  Plaintiff Critcher and Texas Subclass members also seek attorneys' fees and any other just and proper relief available under TDTPA.

159.    For those Texas Subclass members who wish to rescind their purchases, they are entitled under § 17.05(b)(4) to recession and other relief necessary to restore any money or property that was acquired from them based on violations of the TDTPA.

160.    Plaintiff Critcher and Texas Subclass members presently do not claim the relief sought above pursuant to Tex. Bus. Com. Code § 17.505, until Plaintiffs' counsel, on behalf of Plaintiffs and the Texas Subclass, serve Defendant with notice of its alleged violations of the TDTPA relating to the Liquid Cosmetic Products purchased by Texas Plaintiff and the Texas Subclass members, and demanding Defendant correct or agree to correct the actions described above therein.  If Defendant fails to do so within sixty days, Plaintiff seek all damages and relief to which Texas Plaintiff and the Texas Subclass are entitled to.

## COUNT VII
### Violations of the Nevada Deceptive Trade Practices Act
### Nev. Rev. Stat. § 598.0915 *et seq.* and Nev. Rev. Stat. § 41.600(1)
### On behalf of Plaintiff Belbot and the Nevada Subclass

161.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

162.    This claim asserts violations of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. 598.0915 *et seq.* and Nev. Rev. Stat. § 41.600(1).

163.    Plaintiff Belbot and members of the Nevada Subclass are "persons" within the meaning of Sections 598.0915 and 598.0923.

164.    Plaintiff Belbot and members of the Nevada Subclass are "victim(s) of consumer fraud" within the meaning of Nev. Rev. Stat. § 41.600(1).

165.    Defendant's Liquid Cosmetic Products were directly offered to the public for sale and constitute "goods or services" within the NDTPA.

166.    Defendant's acts and practices, including the misrepresentations and omissions described herein, violate the NDTPA by, *inter alia*, knowingly making false representations as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods and services for sale or lease in violation of Sections 598.0915(7) and 598.0915(15), advertising the goods and services with intent not to sell them as advertised in violation of Sections 598.0915(9), and failing to disclose a material fact in violation of section 598.0923(2).

167.    Plaintiff Belbot and Nevada Subclass members have been harmed by Defendant's conduct, and have suffered ascertainable losses and damages, and accordingly seek damages, penalties, injunctive and declaratory relief, restitution, attorneys' fees and costs of suit.

## COUNT VIII
### Unjust Enrichment
### On Behalf of Plaintiffs and the Nationwide Class under New York law and, or in the Alternative, on behalf of Plaintiffs' Respective State Subclasses Under Their Respective State Laws

168.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

169.     By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiffs and Class members.

170.     Defendant, prior to and at the time Plaintiffs and the members of the Class decided to purchase Liquid Cosmetic Products, knew and had knowledge and information that the products' packaging suffered from defect.

171.     Defendant was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to the products' packaging defect before deciding whether or not to the purchase the Liquid Cosmetic Products. Defendant was also aware that if the products' packaging defect was disclosed it would negatively affect the demand class members had to purchase the Liquid Cosmetic Products.

172.     Defendant failed to disclose facts pertaining to the products' packaging defect before Plaintiffs and Class members made their decisions to purchase the Liquid Cosmetic Products. Instead, Defendant suppressed and concealed information related to the products' packaging defect. By concealing and suppressing that information, Defendant denied consumers in the Class the ability to make a rational and informed purchasing decision as to the purchase of the Liquid Cosmetic Products and took undue advantage of Plaintiffs and Class members.

173.     Defendant was unjustly enriched at the expense of Plaintiffs and Class members. Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiffs and Class members who purchased the Liquid Cosmetic Products. By contrast, Plaintiffs and Class members did not receive the benefit of their bargain because they paid for products they could not reasonably consumer due to Defendant's defective packaging and misrepresentations about the consumable amount in each pump.

174.     Since Defendant's profits, benefits, and other compensation were obtained by improper means, Defendant is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from the Liquid Cosmetic Products.

175.     Plaintiffs and Class members seek an order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

**COUNT IX**
**Declaratory and Injunctive Relief**
**On behalf of the Nationwide Class**

176.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

177.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

178.     An actual controversy has arisen.  Plaintiffs allege that Defendant's Liquid Cosmetic Products were and remain defective.  Plaintiffs continue to suffer injury as a result of the defect.

179.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.     Defendant owed and continues to owe a legal duty to market and sell its products defect-free or, at the very least, to inform consumers of the defect;

b.      Defendant continues to breach this legal duty by failing to employ reasonable measures to prevent defects in its products or inform consumers of potential and actual defects.

180.    The Court also should issue corresponding injunctive relief requiring Defendant to employ adequate quality control consistent with industry standards to eliminate the defect.

181.    If an injunction is not issued, Plaintiffs will suffer continual injury, and lack an adequate legal remedy.

182.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.

183.    Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing deceptive acts and practices in the market, thus eliminating the additional injuries that would result to Plaintiffs and the millions of consumers who use these products.

## COUNT X
### Breach of the Implied Warranty of Merchantability
### On Behalf of Plaintiffs and the Nationwide Class under New York law and, or in the Alternative, on behalf of Plaintiffs' Respective State Subclasses Under Their Respective State Laws

184.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

185.    Defendant impliedly warranted that the Liquid Cosmetic Products were of a merchantable quality under the Uniform Commercial Code, and states' statutory and common laws requiring consumer products be merchantable and fit for sale.

186.    Defendant breached the implied warranty of merchantability because the Liquid Cosmetic Products were not of a merchantable quality due to the pump dispenser defect and other conduct alleged above.

187. If necessary, Plaintiffs' and Class members' interactions with Defendant suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Defendant, on the other hand. However, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third party beneficiaries of contracts (including implied warranties) between Defendant and the retailers who sell the Liquid Cosmetic Products. Defendant's warranties were designed for the benefit of consumers who purchase(d) Liquid Cosmetic Products.

188. As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages. As a result of Defendant's breach of warranties, Class members have suffered damages because they have purchased Liquid Cosmetic Products they would not have otherwise purchased and/or paid more for Liquid Cosmetic Products than they would have otherwise paid. Plaintiff and Class members are entitled to receive damages from Defendant in an amount to be determined at trial.

189. Defendant's attempts to disclaim or limit the implied warranty of merchantability *vis-à-vis* consumers are unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold defective products without informing consumers about the pump dispensing defect.

190. Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

191. Defendant was provided notice of these issues by numerous complaints lodged by consumers.

## COUNT XI
### Negligent Misrepresentation
**On Behalf of Plaintiffs and the Nationwide Class under New York law and/or in the Alternative under Plaintiffs' Respective State Subclasses**

192.     Plaintiffs hereby incorporate by reference the factual allegations contained herein.

193.     Defendant negligently and recklessly omitted certain material facts regarding the pump dispensers in its Liquid Cosmetic Products.  Defendant failed to warn consumers that the pump dispensers would likely fail, stranding a material amount of Liquid Cosmetic Product in the bottle.

194.     Under the circumstances alleged, Defendant owed a duty to Plaintiffs and Class members to provide them with a non-defective pump dispenser that would allow them to access the product they bargained for.

195.     Defendant misrepresented to Plaintiffs and Class members that by purchasing the Liquid Cosmetic Products, they would be enjoying the full amount of listed product.  This is not what Plaintiffs or Class members actually received.  Defendant failed to inform consumers of the Liquid Cosmetic Products' defective pump dispensers.

196.     Defendant's misrepresentations and omissions, as described herein, were false, negligent, and material.

197.     The information misrepresented to Plaintiffs and other Class members is material and would have been considered by a reasonable person.

198.     Defendant negligently made these misrepresentations and omissions with the understanding that Plaintiffs and Class members would rely upon them.

199.     Plaintiffs and Class members did, in fact, reasonably rely upon these misrepresentations and omissions made by Defendant.

200.     As a direct and proximate result of Defendant's negligent actions, Plaintiffs and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

201.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for damages and declaratory relief.

## PRAYER FOR RELIEF

**THEREFORE,** Plaintiffs seeks judgment against Defendant, as follows:

A.     Certifying the Class and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

B.     Declaring the Defendant's conduct violates the statutes referenced herein;

C.     Finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.     Granting damages, restitution, or disgorgement to Plaintiffs and the Class;

E.     Granting declaratory and injunctive relief to enjoin Defendant from engaging in the unlawful practices described in this Complaint;

F.     Granting compensatory damages, the amount of which is to be determined at trial;

G.     Granting punitive damages;

H.     Granting pre- and post-judgment interest on all amounts awarded;

I.     Granting restitution and all other forms of equitable monetary relief;

J.     Granting injunctive relief as pleaded or as the Court may deem proper;

K.     Awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit; and

L.     Granting further relief as this Court may deem proper.

# JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED:  June 21, 2018        **KAPLAN FOX & KILSHEIMER LLP**

By: _ s/ Laurence D. King_
       Laurence D. King

Laurence D. King (S.D.N.Y. Bar No. LK7190)
Matthew B. George (to be admitted *pro hac vice*)
350 Sansome Street, Suite 400
San Francisco, CA  94104-1308
Telephone:  (415) 772-4700
Email: *lking@kaplanfox.com*
     *mgeorge@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Ralph E. Labaton (S.D.N.Y. Bar No. RL8702)
850 Third Avenue
New York, NY  10022-7237
Telephone:  (212) 687-1980
Email: *rlabaton@kaplanfox.com*

**SNYDER LAW FIRM LLC**
Karen E. Snyder (to be admitted *pro hac vice*)
Paul D. Snyder (to be admitted *pro hac vice*)
13401 Mission Road, Suite 207
Leawood, KS  66209
Telephone: (913) 685-3900
Facsimile: (913) 440-0724
Email: *ksnyder@snyderlawfirmllc.com*
     *psnyder@snyderlawfirmllc.com*

**WILLIAMS DIRKS DAMERON LLC**
Matt Dameron (to be admitted *pro hac vice*)
1100 Main Street, Suite 2600
Kansas City, MO  64105
Telephone: (816) 945-7110
Facsimile:  (816) 945-7118
Email: *matt@williamsdirks.com*

*Counsel for Plaintiffs*