# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY TULLIE CRITCHER *et al.* | Case No.1:18-cv-05639-JGK |
| Plaintiffs, | |
| v. | |
| L'OREAL USA, INC., | |
| Defendant | |

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

### Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6)

---

**GORDON REES SCULLY MANSUKHANI LLP**
*Attorneys for defendant L'Oréal USA, Inc*

1 Battery Park Plaza, 28th floor
New York, New York 10004
T:  (212) 269-5500
E: jlewis@grsm.com

*Of Counsel and on the Brief:*
   Miles D. Scully*
   Peter G. Siachos
   Justin D. Lewis*
   JoAnna M. Doherty
   * *pro hac vice* applications pending

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

FACTS...........................................................................................................................2

THE COMPLAINT REQUIRES  DISMISSAL. ..........................................................3

I.      Federal Law Mandating Net Quantity Labeling Preempts the Entire
        Complaint. ...................................................................................................3

II.     Plaintiffs Cannot Plausibly Plead Any Material Deception of Reasonable
        Consumers. ..................................................................................................9

III.    Plaintiffs Lack Standing To Seek Injunctive And Declaratory Relief. ...............13

IV.     Each Plaintiff Lacks Standing To Assert Claims Related To Products She
        Did Not Purchase..........................................................................................18

V.      New York Law Cannot Apply Nationwide Nor Be Asserted By Non-New
        York Purchasers............................................................................................20

VI.     The Unjust Enrichment Claims Require Dismissal...............................................21

        A.      The Unjust Enrichment Claims Are Impermissibly Duplicative. ............21

        B.      Adequate Legal Remedies Preclude Unjust Enrichment Claims. ............22

        C.      Unjust Enrichment Is Not A Cause Of Action In Texas. ..........................24

VII.    The Implied Warranty Claims Should Not Proceed..............................................24

        A.      Plaintiffs Cannot Plausibly Allege The Products Are Unfit for Sale. .......24

        B.      Plaintiffs Have No Contractual Privity With L'Oreal. ..............................26

        C.      Critcher, Clark-Sheppard, Feiges, and Fournier Afforded L'Oreal
                No Pre- Suit Notice. .................................................................................27

VIII.   The Negligent Misrepresentation Claim Also Requires Dismissal.....................28

        A.      Negligent Misrepresentation Claims Fail For Lack of Privity or
                Special Relationship. ...............................................................................28

        B.      New York, Florida, Texas, Kansas, Michigan, and Maryland
                Negligent Misrepresentation Claims Are Barred By The Economic
                Loss Doctrine...........................................................................................29

IX.    Statutory Claims Fail For Additional Reasons. ...................................................... 29

       A.    Critcher Does Not Plead The Notice Required By Texas's Consumer Statute ........................................................................... 29

       B.    Clark-Sheppard Purchased In Kansas, Not Missouri. ............................ 30

CONCLUSION .............................................................................................................. 30

CERTIFICATE OF COMPLIANCE ............................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alce v. Wise Foods, Inc.*,
　No. 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009 (S.D.N.Y. Mar. 27, 2018) ..............16

*Alphonse Hotel Corp. v. Tran*,
　828 F.3d 146 (2d Cir. 2016) .......................................................................................20

*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*,
　390 F.Supp.2d 1170 (M.D. Fla. 2005)........................................................................23

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997)....................................................................................................18

*Anschutz Corp. v. Merrill Lynch & Co.*,
　690 F.3d 98 (2d Cir. 2012) .........................................................................................28

*Argyle Indep. Sch. Dist. v. Wolf*,
　234 S.W.3d 229 (Tex. Ct. App. 2007).........................................................................24

*Avon Anti-Aging Skincare Creams & Procs. Mktg. & Sales Practices Litig.*,
　No. 13-CV-150 (JPO), 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sep. 30, 2015) .................16

*Bailey v. Monaco Coach Corp.*,
　168 Fed. App'x 893 (11th Cir. 2006) ..........................................................................26

*Bimont v. Unilever U.S., Inc.*,
　No. 14-cv-7749 (JPO), 2015 U.S. Dist. LEXIS 119908 (S.D.N.Y. Sep. 9, 2015)............6, 7, 8

*Bowling v. Johnson & Johnson*,
　65 F. Supp. 3d 371 (S.D.N.Y. 2014) ...........................................................................3

*Canale v. Colgate-Palmolive Co.*,
　258 F. Supp. 3d 312 (S.D.N.Y. 2017) .........................................................................8

*Casey v. Odwalla, Inc.*,
　No. 17-CV-2148 (NSR), 2018 U.S. Dist. LEXIS 160237 (S.D.N.Y. Sep. 19, 2018) ....5, 15, 16

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*,
　No. 3:16-cv-186, 2018 U.S. Dist. LEXIS 24920 (M.D. Fla. Feb. 15, 2018)..........................23

*Chamber of Commerce of the U.S. v. Whiting*,
　563 U.S. 582 (2011)....................................................................................................5

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013)...........................................................................................14

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777 (N.Y. 2012) ..............................................................................22

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................15

*Daniel v. Tootsie Roll Indus., LLC*,
    No. 17 Civ. 7541 (NRB), 2018 U.S. Dist. LEXIS 129143 (S.D.N.Y. Aug. 1, 2018) ..........5, 16

*Davis v. Hain Celestial Grp., Inc.*,
    No. 17-cv-5191-ARR, 2018 U.S. Dist. LEXIS 56794 (E.D.N.Y. Apr. 3, 2018) ....................16

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998) .............................................................................14

*Dimuro v. Clinique Labs., LLC*,
    572 Fed. App'x 27 (2d Cir. 2014) .....................................................................18

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011)...................................................................28

*Duffie v. Mich. Group. Inc.-Livingston*,
    No. 14-cv-14148, 2016 U.S. Dist. LEXIS 186829 (E.D. Mich. Jan. 15, 2016) ....................24

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...............................................8, 9, 10, 11, 12, 13, 21

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-CV-2484(JS), 2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. May 14, 2015)..............16, 29

*Fed. Treasury Enter. Sojuzplodoimport v. Sprits Intl. N.V.*,
    400 Fed. Appx. 611 (2d Cir. 2010).....................................................................23

*Feliciano v. GM, LLC*,
    No. 14 Civ. 6374 (AT), 2016 U.S. Dist. LEXIS 194728 (S.D.N.Y. Mar. 31, 2016) ..............24

*Finnerty v. Howmedica Osteonics Corp.*,
    No. 2:14-cv-00114-GMN-GWF, 2016 U.S. Dist. LEXIS 123071
    (D. Nev. Sep. 12, 2016) ...................................................................................26

*Foster v. Chattem, Inc.*,
    No. 6:14-CV-346-ORL-37, 2014 U.S. Dist. LEXIS 100994, 2014 WL 3687129
    (M.D. Fla. July 24, 2014) .................................................................................26

*Gisvold v. Merck & Co.*,
    62 F. Supp. 3d 1198 (S.D. Cal. 2014).................................................................6

*Gorman v. Am. Honda Motor Co.*,
    302 Mich. App. 113 (Mich. Ct. App. 2013) ........................................................27

*Hancock v. Chi. Title Ins. Co.*,
    635 F. Supp. 2d 539 (N.D. Tex. 2009) ...............................................................24

*Hart v. BHH, LLC*,
    No. 15cv4804, 2016 U.S. Dist. LEXIS 59943 (S.D.N.Y. May 5, 2016).................19

*Hawkins v. UGI Corp.*,
    No. 14-8461 DDP, 2016 U.S. Dist. LEXIS 60013 (C.D. Cal. May 4, 2016)...............9, 10, 11

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015) ..................................................14, 15, 16, 17

*Hillen v. Blistex, Inc.*,
    No. 17 C 2074, 2017 U.S. Dist. LEXIS 103300 (N.D. Ill. July 5, 2017) ....................9, 10, 12

*Hope v. Nissan N. Am., Inc.*
    353 S.W.3d 68 (Mo. Ct. App. 2011) ...................................................................28

*Hughes v. Ester C Co.*,
    317 F.R.D 333 (E.D.N.Y. 2016)..........................................................................21

*In re Agribiotech, Inc.*,
    291 F. Supp. 2d 1186 (D. Nev. 2003)..................................................................29

*In re Amla Litig.*,
    No. 16-cv-6593-JSR, 2018 U.S. Dist. LEXIS 128987 (S.D.N.Y. July 31, 2018)...................15

*In re GMC LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) ......................................................22, 23, 25

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D 139 (S.D.N.Y. 2008) ...........................................................................21

*In re PepsiCo, Inc.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) ...................................................................8

*Intellivision v. Microsoft Corp.*,
    No. 07 Civ. 4079 (JGK), 2008 U.S. Dist. LEXIS 63564 (S.D.N.Y. Aug. 20, 2008)..............21

*Investors, Inc. v. Hadley*,
    738 S.W.2d 737 (Tex. Ct. App. 1987).................................................................30

*Jacques v. First Natl. Bank*,
   307 Md. 527 (Md. Ct. App. 1986) ....................................................................................29

*Johnsen v. Honeywell Int'l, Inc.*,
   No. 14-cv-594, 2015 U.S. Dist. LEXIS 17204 (E.D. Mo. Feb. 12, 2015) .............................28

*Kommer v. Bayer Consumer Health*,
   710 Fed. App'x 43 (2d Cir. 2018) ......................................................................14, 15, 16, 17

*Langan v. Johnson & Johnson Consumer Cos.*,
   No. 3:13-cv-1470, 2017 U.S. Dist. LEXIS 35703 (D. Conn. Mar. 13, 2017)..............15, 16, 18

*Licul v. Volkswagen Group of Am.*,
   No. 13-61686, 2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013)................................22

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983)..........................................................................................................14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................................14, 18

*Mahoney v. Endo Health Solutions, Inc.*,
   No. 15-cv-9841 (DLC), 2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016) .................28

*Massey v. Novartis Pharm. Corp.*,
   46 F. Supp. 3d 688 (W.D. Tex. 2014) ..................................................................................27

*McKay v. Novartis Pharm. Corp.*,
   751 F.3d 694 (5th Cir. 2014) .............................................................................................27

*Mesa v. BMW of N. Am., LLC*,
   904 So. 2d 450 (Fla. Dist. Ct. App. 2005) ...........................................................................26

*Moczulski v. Ferring Pharms., Inc.*,
   No. 18-1094, 2018 U.S. Dist. LEXIS 121341 (D. Md. July 19, 2018) ...................................29

*Morgan v. Medtronic, Inc.*,
   172 F. Supp. 3d 959 (S.D. Tex. 2016) ..................................................................................27

*Morrison v. Hoffman-LaRoche, Inc.*,
   No. 14-cv-4476 (DLI), 2016 U.S. Dist. LEXIS 135291 (E.D.N.Y. Sep. 29, 2016)................25

*Nelson v. Nelson*,
   288 Kan. 570, 205 P.3d 715 (2009)......................................................................................23

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ...............................................................................................10

*Norris v. Grosvenor Mktg.*,
    803 F.2d 1281 (2d Cir. 1986) ..................................................................23

*O'Connor v. Henkel Corp.*,
    No. 14-CV-5547 (ARR), 2015 U.S. Dist. LEXIS 140934 (E.D.N.Y. Sep. 22, 2015) ..........6, 7

*Ocana v. Ford Motor Co.*,
    992 So. 2d 319 (Fla. Dist. Ct. App. 2008) ..............................................26

*Petrosino v. Stearn's Prods.*,
    No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818 (S.D.N.Y. Mar. 30, 2018) ..............16

*Phillips v. C.R. Bard, Inc.*,
    No. 3:12-cv-344-RCJ-WGC, 2014 U.S. Dist. LEXIS 174506 (D. Nev. Dec. 16, 2014) .........27

*Professional Lens Plan, Inc. v. Polaris Leasing Corp.*,
    234 Kan. 742 (Kan. 1984) ..........................................................27

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ..................................................23

*Rentas v. DaimlerChrysler Corp.*,
    936 So. 2d 747 (Fla. Dist. Ct. App. 2006) ..............................................26

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014) ..................................................20

*Ritchie Enterprises v. Honeywell Bull, Inc.*,
    730 F. Supp. 1041 (D. Kan. 1990) ..................................................29

*Rodriguez v. Hanesbrands, Inc.*,
    No. 17-CV-1612 (DLI), 2018 U.S. Dist. LEXIS 28002 (E.D.N.Y. Feb. 20, 2018) ................16

*Rosipko v. FCA US, LLC*,
    No. 15-11030, 2015 U.S. Dist. LEXIS 163455 (E.D. Mich. Dec. 7, 2015) ............................27

*Samiento v. World Yacht, Inc.*,
    10 N.Y.3d 70 (N.Y. 2008) ..................................................23

*Singleton v. Fifth Generation, Inc.*,
    No. 5:15-CV-474 (BKS), 2017 U.S. Dist. LEXIS 170415 (N.D.N.Y. Sep. 27, 2017) ...........16

*Sitt v. Nature's Bounty, Inc.*,
    No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sep. 26, 2016).......16, 22

*Small v. Univ. Med. Ctr. of S. Nev.*,
    No. 2:13-cv-298-APG-PAL, 2016 U.S. Dist. LEXIS 102508 (D. Nev. Aug. 3, 2016)............23

*Snyder v. Boston Whaler*,
    892 F. Supp. 955 (W.D. Mich. 1994) ...................................................................29

*Sterling Chems., Inc. v. Texaco, Inc.*,
    259 S.W.3d 793 (Tex. Ct. App. 2007) .................................................................29

*Tkachik v. Mandeville*,
    487 Mich. 38 (2010) ...........................................................................................24

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...............................................14, 15, 16, 17

*Tomassini v. FCA US LLC*,
    No. 3:14-cv-1226 (MAD/DEP), 2018 U.S. Dist. LEXIS 131459
    (N.D.N.Y. Aug. 6, 2018) .....................................................................................16

*Trainum v. Rockwell Collins, Inc.*,
    No. 16-cv-7005 (JSR), 2017 U.S. Dist. LEXIS 83260 (S.D.N.Y. May 30, 2017)..................22

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ................................................................................8

*Tyman v. Pfizer, Inc.*,
    No. 16-cv-6941 (LTS) (BCM), 2017 U.S. Dist. LEXIS 212879
    (S.D.N.Y. Dec. 27, 2017) ....................................................................................29

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*,
    110 S.W.3d 194 (Tex. App. 2003) ..................................................................27, 28

*Vazquez v. GM, LLC*,
    No. 17-22209, 2018 U.S. Dist. LEXIS 6875 (S.D. Fla. Jan. 16, 2018)..................23

*Weaver v. Mateer & Harbert, P.A.*,
    No. 5:09-cv-514-Oc-34TBS, 2012 U.S. Dist. LEXIS 104771 (M.D. Fla. Jul. 27, 2012) ........23

**Statutes**

15 U.S.C. § 1453 .......................................................................................................4

15 U.S.C. § 1461 ....................................................................................................4, 5

21 U.S.C. § 301 .........................................................................................................3

21 U.S.C. § 343-1 .....................................................................................................5

21 U.S.C. § 352 .........................................................................................................7

21 U.S.C. § 362 .........................................................................................................7

21 U.S.C. § 371 .............................................................................................................3

21 U.S.C. § 379r ............................................................................................................4

21 U.S.C. § 379s .......................................................................................................4, 5

28 U.S.C. § 2072 ........................................................................................................18

MD. CODE ANN., COM. LAW § 2-607 ........................................................................28

MICH. COMP. LAWS SERV. § 440.2607 ......................................................................27

MO. REV. STAT § 407.020 ..........................................................................................30

N.Y. GEN. BUS. LAW § 349 ..................................................................................15, 22

TEX. BUS. & COM. CODE § 17.505 ............................................................................30

TEX. BUS. & COM. CODE § 2.607 .............................................................................27

**Rules**

F.R.C.P. 12 .........................................................................................................10, 14

F.R.C.P. 23 .................................................................................................................18

F.R.C.P. 82 .................................................................................................................18

**Regulations**

21 C.F.R. § 201.62 .......................................................................................................3

21 C.F.R. § 701.13 ................................................................................................3, 4, 6

**Treatise**

1 MCLAUGHLIN ON CLASS ACTIONS § 4:28 (13th ed.) ...............................................14

**<u>INTRODUCTION</u>**

The extraordinary theory of this complaint by eight cosmetics consumers seeks not just the demotion of supreme federal law beneath purported requirements of inferior, preempted state law. If validated as plausible, it would also invite a wave of unfounded challenges to much of the drugstore, not just the four L'Oreal products challenged here.

Plaintiffs explicitly admit that they received every millimeter of makeup stated on the labels of the two products they actually purchased. There is no dispute that the quantity labels are entirely truthful. Nor does the complaint identify a single instance where L'Oreal either expressly or impliedly made any other representations concerning the quantity of product contents whatsoever.

Still, Plaintiffs are unhappy that pumps on the products' bottles allegedly did not dispense as much of the viscous cosmetic substances as they now claim they expected. They objected to the effort of opening their bottles to access the residue, but they now regard the residue as valuable enough to file a federal lawsuit, even though the makeup's viscous nature and dispensing mechanisms were obvious at purchase. One wonders how many cosmetics, soaps, shampoos, toothpastes, hair styling gels, lotions, ointments, and any number of other viscous household, cosmetic, or personal care products Plaintiffs purchased before. In fact, Plaintiffs' repeated purchases of the disputed products show that their experiences conformed to their own reasonable expectations. The complaint simply pleads no plausible material deception of reasonable consumers.

In any event, federal law dictates the precise cosmetic quantity labeling practices Plaintiffs challenge here. It specifically mandates that L'Oreal label these products with the entire net quantity of their contents, irrespective of whatever portion Plaintiffs believe is readily

1

dispensable by pump without opening the bottles.  Federal law expressly preempts this complaint because it seeks to impose non-identical state law requirements for cosmetic quantity labeling, different than and in addition to federal prescriptions on exactly that subject matter.

Additional claims fail as a matter of law for more claim-specific reasons, as set out below.  In all, this implausible complaint is entirely preempted and warrants dismissal with prejudice because amendment would be futile.

## FACTS

The first amended complaint challenges four consumer cosmetic products manufactured by defendant L'Oreal USA, Inc.  These include the Visible Lift Serum, Age Perfect Eye Cream, SuperStay Foundation, and RevitaLift Moisturizer.  Dkt. 28, ¶¶ 30-31.  Of the four products, plaintiffs Mary Tullie Critcher, Twoana Clark-Sheppard, Victoria Marynovsky, Patricia Belbot, Jessica Petrie, Linda Feiges, Georgette Fournier, and Sarah McQueary purchased only the Visible Lift Serum and Age Perfect Eye Cream.  *Id*. at ¶¶ 42, 47, 49, 54, 57, 62, 65, 67.

The complaint expressly admits that all four products' quantity labels "accurately state the total amount of product contained therein."  Dkt 28, ¶ 5.  Further, the products Plaintiffs purchased occupy clear glass bottles.  Ex. A (Visible Lift Serum packaging); Ex. B (Age Perfect Eye Cream packaging); dkt. 28, ¶ 32 (alleging only that RevitaLift Moisturizer, which Plaintiffs did not purchase, occupies opaque bottle).  Plaintiffs admit that the substances inside, like almost all liquid cosmetics, are "viscous" in nature.  *Id*.; *id*. at ¶ 6.  They further admit that alleged residue not dispensed by the bottles' pumps coats "the sides of the containers" in a fashion that would be obvious through clear glass.  *Id*.

Critcher purchased the Visible Lift Serum at least twice over a year apart (dkt. 28, ¶¶ 43, 45), despite posting an online complaint about the alleged dispensing failure after her first

purchase.  *Id*. at ¶ 44.  Marynovsky purchased the Age Perfect Eye Cream at least three times and also posted a complaint online, similarly demonstrating that she observed the allegedly undispensed residue.  *Id*. at ¶¶ 49-51, 53.  Petrie bought the Visible Lift Serum at least twice and telephoned L'Oreal to complain.  *Id*. at ¶¶ 57, 59, 61.  Belbot does not plead how frequently she repurchased the Visible Lift Serum except to concede she "purchased several containers" over two years.  *Id*. at ¶ 54.  She also posted an online complaint.  *Id*. at ¶ 56.  Clark-Sheppard lives in Missouri but purchased the Visible Lift Serum somewhere in Kansas.  *Id*. at ¶¶ 17, 47.

## THE COMPLAINT REQUIRES  DISMISSAL.

**I.     Federal Law Mandating Net Quantity Labeling Preempts the Entire Complaint.**

The federal requirement that L'Oreal label the products' packaging with the entire net quantities of their contents preempts the theory underlying all of Plaintiffs' state law claims:  that L'Oreal's quantity labeling should have instead stated the allegedly smaller "usable amount of cosmetic product."  Dkt. 28, ¶¶ 2, 5.

The Food, Drug, and Cosmetic Act (FDCA) sets out a "comprehensive statutory framework" for regulating the labeling and marketing of food, drugs, and cosmetics.  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 374 (S.D.N.Y. 2014); 21 U.S.C. § 301 *et seq*.  Pursuant to its authority under the FDCA (21 U.S.C. § 371), the FDA has promulgated intricate regulations in the area of quantity labeling for consumer cosmetics, and decided not to require manufacturers to disclose what portion is usable or reasonably accessible.  21 C.F.R. § 701.13(a), (g) (cosmetics); 21 C.F.R. § 201.62(a), (f) (similar for drugs).

Rather, federal regulations require that the "[t]he label of a cosmetic in package form shall bear a declaration of the net quantity of contents" (21 C.F.R. § 701.13(a)), which "shall accurately reveal the quantity of cosmetic in the package exclusive of wrappers and other

material packed therewith" (21 C.F.R. § 701.13(g)).  Similarly, the Fair Packaging and Labeling

Act ("FPLA") expressly mandates labeling of "net quantity of contents" in "any packaged

consumer commodity."  15 U.S.C. § 1453(a)(2).

Put another way, federal law not only permitted but required L'Oreal to label these four

products with the net quantity of their entire contents irrespective of whatever portions these

Plaintiffs believe are usable or reasonably accessible.  Plaintiffs make no allegation that

L'Oreal's labels run afoul of federal requirements, nor can they.  In fact, Plaintiffs admit that

"the containers accurately state the total amount of product contained therein."  Dkt. 28, ¶ 5.

The FDCA and corresponding FDA regulations preempt any state law that imposes a

quantity labeling requirement on drugs or cosmetics that is not identical to federal law.  More

particularly, the FDCA expressly forbids the states to "establish or continue in effect any

requirement for labeling or packaging of a cosmetic that is *different* from *or in addition to*, or

that is otherwise *not identical* with, a requirement specifically applicable to a particular cosmetic

or class of cosmetics under [the FDCA]…or the Fair Packaging and Labeling Act."  21 U.S.C. §

379s(a) (emphases added).  Similar language forbids non-identical state requirements for over-

the-counter drugs.  21 U.S.C. § 379r(a).

Additionally, the FPLA's quantity labeling provision also carries express preemptive

force against state law.  15 U.S.C § 1461 (stating that is "the express intent of Congress to

supersede any and all laws of the States…insofar as they…provide for the labeling of the net

quantity of contents of the package of any consumer commodity…which…*require information*

*different* from" federal law and regulations) (emphasis added).

The extraordinarily broad preemptive scope of these provisions does not extend only to

requirements of state law that directly conflict with federal law.  Rather, by the statutes' clear

and express terms, preemption extends also to state law obligations that are "not identical with" or merely "in addition to" the federal requirements.  *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (to determine breadth of preemption, courts must "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent"); *see Casey v. Odwalla, Inc*. No. 17-CV-2148 (NSR), 2018 U.S. Dist. LEXIS 160237 at *16 (S.D.N.Y. Sep. 19, 2018) (under similar FDCA provision at 21 U.S.C. § 343-1(a)(1) preempting "not identical" requirements of state law, "if a product's packaging does not run afoul of federal law governing food labeling, no state law claim for consumer deception will lie") (quoting *Daniel v. Tootsie Roll Indus., LLC*, No. 17 Civ. 7541 (NRB), 2018 U.S. Dist. LEXIS 129143 at *9 (S.D.N.Y. Aug. 1, 2018).

Thus, all of the complaint's state law claims are preempted because they would harness state law to impose non-identical, different, and additional requirements for the quantity labeling of these cosmetics beyond those already dictated by the FDA and federal statute.  Federal law requires that manufacturers label consumer cosmetics with the net quantity of the product exclusive of its packaging, and does not require that manufacturers make additional disclosures the "usable," "reasonably accessible," or "consumable" quantity.  *E.g.*, dkt. 28, ¶¶ 2, 5, 14, 93, 110, 121, 148, 165, 200, 220.  All of Plaintiffs' state law claims indispensably rely on the propositions that either (1) L'Oreal's quantity labeling on these four cosmetics should include additional disclaimers regarding the quantity that is usable or reasonably accessible to consumers, or that (2) "net quantity" should be measured for cosmetics as that which is usable or reasonably accessible to consumers.  *Id*.  Either of these would impose invalid state law requirements that are "not identical" but "different" or "in addition" to the FDA regulations and FLPA.  21 U.S.C. § 379s(a); 15 U.S.C § 1461; *see Gisvold v. Merck & Co*., 62 F. Supp. 3d 1198,

1203 (S.D. Cal. 2014) (where FDA prescribes sunscreen SPF labeling, plaintiff's invocation of state law to require disclaimer about inefficacy of SPF above 50 "plainly adds to and is not identical with the FDA's requirements").

Indeed, Congress and the FDA determined that consumers will be adequately protected if a cosmetic label states the net quantity of contents inside the packaging in accordance with the regulations and FPLA, notwithstanding Plaintiffs' theory that this practice "precludes consumers from making useful and accurate value comparisons." Dkt. 28, ¶ 13; *id.* at ¶ 76(c) (same). Significantly, the FDA regulations provide that if "the Commissioner determines for a specific packaged cosmetic that an existing practice of declaring net quantity of contents…does not facilitate value comparisons by consumers, he *shall* by regulation designate the appropriate term or terms to be used for such cosmetic." 21 C.F.R. § 701.13(a) (emphasis added). Therefore, had the FDA found that net quantity labeling did not provide consumers with proper value comparisons for products with dispenser pumps, it was required to issue further regulations. It has not. Likewise, Congress could have required that cosmetics be labeled with the reasonably accessible quantity, but did not. *See O'Connor v. Henkel Corp.*, No. 14-CV-5547 (ARR), 2015 U.S. Dist. LEXIS 140934 at *14 (E.D.N.Y. Sep. 22, 2015).

Courts in this circuit have already rejected the usable quantity theory that Plaintiffs press here. In *Bimont v. Unilever U.S., Inc.*, No. 14-cv-7749 (JPO), 2015 U.S. Dist. LEXIS 119908 (S.D.N.Y. Sep. 9, 2015), the plaintiffs claimed that the packaging of Axe deodorant rendered a portion of deodorant unusable by consumers, and that this rendered the quantity labeling misleading. *Id.* at *20. They alleged violation of several states' consumer protection laws, breach of warranty, negligent misrepresentation, and unjust enrichment. *Id.* at *1. In other words, the deodorant plaintiffs asserted the same legal claims on the same factual theory as

Plaintiffs here.   Finding the claims wholly preempted, Judge Oetken dismissed them with prejudice.  *Id*. at *20-*22; *id*. at *24 ("amendment would be futile").

In *O'Connor*, the Eastern District ruled similarly in another deodorant case where the plaintiffs alleged that the labels deceptively "display[ed] net weight statements greater than the actual weight of usable product" due to the challenged design of the deodorant dispensing mechanism.  *O'Connor,* 2015 U.S. Dist. LEXIS 140934 at *4, *9 (E.D.N.Y. Sep. 22, 2015).  As here, the plaintiffs asserted claims of statutory consumer protection, warranty, negligent misrepresentation, and unjust enrichment.  *Id*. at *5.  Those claims could not "escape the preemptive force of the FDCA" unless they "seek to impose requirements that (1) are identical to those imposed by the FDCA, or (2) are outside the scope of the relevant federal requirements." *Id*. at *11.

Finding that "[t]he federal regulatory scheme addresses measurement and labeling of product quantity head-on" by requiring the labeling of cosmetics' "net quantity," Judge Ross ruled that the plaintiffs' theory sought to impose non-identical requirements on a matter "within the scope of the federal requirements."  *O'Connor,* 2015 U.S. Dist. LEXIS 140934 at *11, *13. By demanding disclosure of the usable quantity, "different or additional requirements are precisely what plaintiffs seek in this litigation."  *Id*. at *12.  All state law claims predicated on alleged deception concerning the usable quantity were therefore preempted.  *Id*. at *14. Accordingly, the court dismissed them with prejudice.  *Id*. at *29.

Nonetheless, L'Oreal anticipates that Plaintiffs will argue their claims are not preempted because a general provision of the FDCA prohibits the "false or misleading" labeling of drugs or cosmetics.  *See* 21 U.S.C. §§ 352(a)(1), 362(a).  If that were the *only federal requirement* relevant to the products at issue, then Plaintiffs' claims might not be expressly preempted to the

extent they seek to enforce identical state law prohibitions.  "But if there are *other* relevant federal requirements governing Defendants' products, they must be compared to the requirement[s] plaintiff[s] seek to impose via state law." *Canale v. Colgate-Palmolive Co*., 258 F. Supp. 3d 312, 320 (S.D.N.Y. 2017); *compare Ebner v. Fresh, Inc*., 838 F.3d 958 (9th Cir. 2016).  Where, as here, federal law specifically regulates the subject matter of a plaintiff's state law claims, and those claims seek to impose requirements not identical to federal requirements, those state law claims are preempted, notwithstanding any superficial alignment between the most general federal and state prohibitions on false or misleading labeling.  *Canale,* 258 F Supp. 3d at 320; *Bimont,* 2015 U.S. Dist. LEXIS 119908 at *11-*12 (while both state and federal law generally forbid misleading packaging of drugs and cosmetics, proper inquiry is whether Congress and/or FDA has addressed the subject matter of plaintiff's theory); *id*. at *20-*22 ("usable" weight theory therefore preempted); *In re PepsiCo, Inc*., 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) ("Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements."); *Turek v. Gen. Mills, Inc*., 662 F.3d  423, 425-426 (7th Cir. 2011) (to determine whether plaintiff's consumer protection claims based on representations about snack bar's dietary fiber were preempted, court must examine "what requirements the federal law imposes on the labeling of dietary fiber").

In sum, Plaintiffs' complaint impermissibly seeks to impose state law quantity labeling requirements for consumer cosmetics different and beyond those permitted and mandated by federal law.  Accordingly, it merits complete dismissal with prejudice.  This litigation cannot proceed.

## II.     Plaintiffs Cannot Plausibly Plead Any Material Deception of Reasonable Consumers.

The complaint must also be dismissed because Plaintiffs cannot plausibly allege that L'Oreal's entirely truthful quantity labeling constitutes material deception of reasonable consumers.  The consumer fraud theory underlying every claim is therefore missing its foundation.

First, Plaintiffs do not contend that the items they purchased contained less product than the quantities stated on the bottles.  This is not a case where the manufacturer allegedly underfilled the stated quantity of product, thereby gaining illicit profits.  Rather, Plaintiffs admit that "the containers accurately state the total amount of product contained therein."  Dkt. 28, ¶ 5; *see Hillen v. Blistex, Inc.*, No. 17 C 2074, 2017 U.S. Dist. LEXIS 103300 at *7 (N.D. Ill. July 5, 2017) (finding no deception regarding usable quantity of lip balm dispensed by challenged tube design in part because no dispute of "net weight stated on the label").  L'Oreal's products undisputedly contain all of the cosmetics they claim to.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (affirming dismissal with prejudice because it was "undisputed that [lip balm's] label discloses the correct weight," despite plaintiffs' theory that at least 25% failed to dispense); *Hawkins v. UGI Corp.*, No. 14-8461 DDP, 2016 U.S. Dist. LEXIS 60013 at *6, *3 (C.D. Cal. May 4, 2016) (due to "undisputedly accurate representation that Defendants' propane cylinders contain fifteen pounds of propane, Plaintiffs could not plausibly allege that consumers were misled," despite "Plaintiffs' emphasis on usable quantities" and alleged failure to fully dispense).

Nor can Plaintiffs claim to have been surprised or deceived by the nature of the dispensing mechanism.  It is obvious from the most casual observation that all four disputed products are contained within bottles tapped by pump dispensers.  Dkt. 28 at 7-8 (photographs);

Exs. A, B, C, D (examples of packaging).[1]  Of the only two products that these Plaintiffs actually purchased, the Visible Lift Serum's dispenser pump is readily apparent through the removable clear cap sitting atop the bottle (Ex. A), and the Age Perfect Eye Cream's pump is pictured unmistakably in the clear plastic window of its packaging carton.  Ex. B; *see Hillen*, 2017 U.S. Dist. LEXIS 103300 at *7-*8 (plaintiff could not "claim to have been surprised by the shape of the tube, which indeed is pictured on the packaging").  Indeed, the complaint itself underscores that reasonable consumers would take notice of the pump before deciding to purchase.  Dkt. 28, ¶ 149 ("Reasonable consumers consider the dispensing capabilities of the products which they purchase to be a material aspect of their decision whether to buy a given cosmetic product").

In addition, nowhere does the complaint allege that L'Oreal made a single representation regarding the "reasonably accessible" quantity or anything like it.  *Hawkins,* 2016 U.S. Dist. LEXIS 60013 at *6 (dismissing inaccessible propane theory with prejudice "as Defendants never made any representation regarding usability or accessibility"); *id*. ("consumers generally know that they may not be able to" access all product contents).  Nor does this complaint identify any "words, pictures, or diagrams adorning the packaging" "from which *any* inference could be drawn or on which any reasonable belief could be based about how much of the total" contents of these products "can be accessed by using" the dispenser pumps.  *Ebner*, 838 F.3d at 966 (emphasis in original).

Rather, cosmetic and personal care products with pump dispensers proliferate the market

---

[1] The packaging of all four products forms the basis of the complaint and is incorporated by reference therein, rendering these exhibits proper material for the Court's consideration on this motion to dismiss under Rule 12.  *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 234 (2d Cir. 2016).

and populate modern consumers' "personal" routines on a daily basis.  Dkt. 28, ¶ 151 ("personal use").  The reasonable consumer understands the "general mechanics" of these pumps and further understands that often some product may not expel.  *See Ebner*, 838 F.3d at 965.  This consumer awareness is especially widespread with respect to substances like soaps, shampoo, toothpaste, lotions, sunscreens, hair gels, ointments, and cosmetics that consumers know to be viscous, and the complaint essentially admits as much.  Dkt. 28, ¶ 9 (makeup is "viscous"); *id*. at ¶¶ 6, 32 ("viscous liquids frequently stick to the sides of the containers").

Further, both of the products Plaintiffs purchased inhabit transparent glass bottles (Exs. A, B), which makes clear that even if the pumps leave some product inside, the consumer can still see that residue remains.  *Ebner*, 838 F.3d at 965 ("even after the [lip balm's dispenser] prevents more product from advancing up the tube, the consumer can still see" that product remains).  "Although the consumer may not know precisely how much product remains, the consumer's knowledge that *some* additional product lies [within] is sufficient to dispel any deception."  *Id*. (emphasis in original); *cf. Hawkins*, 2016 U.S. Dist. LEXIS 60013 at *7, *9 (dismissal even though complaint alleged that it was impossible to observe "amount of propane left" in seemingly spent "opaque" tanks).  That is true whether any such residue gathers at the bottom of the bottle or coats its interior.  Either way, the consumer would see that some additional product remains, and, at that point, "it is up to the consumer to decide whether it is worth the effort to extract any remaining product" by opening the bottle manually or, if necessary, "with a small tool."  *Ebner*, 838 F.3d at 966.  Indeed, the complaint acknowledges that any remaining contents can be accessed by removing the pump.  Dkt. 28 at 9, ¶ (c) (access "remainder with cotton swabs"); *id*. at ¶ (f) ("use all the product" with "the top off"); *id*. at 10, ¶ (a) ("remove the pump"); *id*. at 11, ¶ (b) ("get the rest out").  "That [Plaintiffs] view that solution

11

as 'messy,' 'inconvenient,' or otherwise undesirable does not render defendants' [packaging] design unfair or deceptive." *Hillen*, 2017 U.S. Dist. LEXIS 103300 at \*10; *Ebner v. Fresh, Inc*., No. SACV 13-477 JVS, 2013 U.S. Dist. LEXIS 188889 at \*18-\*19 (C.D. Cal. Sep. 11, 2013) ("consumers may be required to exert more effort in order to extract or apply the remaining product," but "no authority establishing that such a result is unlawful").  Rational consumers, particularly those with any degree of experience with myriad household, cosmetic, or personal care products of a viscous nature dispensed via pump action, will not simply assume that the bottle contains no further product, whether or not they see it.  A reasonable consumer for whom allegedly undispensed residue or even its prospect holds material value will not simply abandon it.

Plaintiffs add that their alleged deception was worsened by the bottles' weight, which they theorize led consumers to wrongly conclude that the weight of residual product is "attributable instead" to bottle weight.  Dkt. 28, ¶ 6.  However, the Ninth Circuit rejected that argument even where a 29-gram package included merely 4.3 grams of lip balm.  *Ebner*, 838 F.3d at 962, 967.  Reasonable consumers of makeup well understand that such bottles must be simultaneously small enough to fit within their users' perhaps crowded vanity bags or purses, be thick and sturdy enough to resist easy breakage, and be stable enough to stand upright on a shelf, countertop, or in a bathroom cabinet.  The reasonable cosmetics consumer understands that these necessities often result in makeup bottles that are relatively heavy compared to their contents. *Ebner*, 838 F.3d at 967 ("the reasonable consumer also understands that some additional weight…may be required to keep the [product] upright").  Moreover, Plaintiffs allege that the products sell for as much as $21 or $25.  Dkt. 28, ¶¶ 65, 67.  At this alleged price-point in the cosmetics market, the bottles' allegedly "weighty feel" is commonplace and even expected.

*Ebner*, 838 F.3d at 967 ("$22.50 to $25.00").  Because of the widespread nature of this practice, no reasonable consumer expects the weight or overall size of the bottles to directly reflect the quantity of product they contain.  *Id*.

Moreover, these Plaintiffs surely regard their own behavior as reasonable.  Indeed, they hold themselves out as so closely typifying the reasonable consumer that they claim qualifications to press putative class claims to be judged on that standard.  Yet, of the two products these Plaintiffs actually purchased, both of which occupy clear glass bottles revealing any residue, Belbot bought the Visible Lift Serum "several" times over two years.  Dkt. 28, ¶ 54. Petrie and Critcher purchased it at least twice.  *Id.* at ¶¶ 45, 59.  Marynovsky bought the Age Perfect Eye Cream three times, weeks or months apart.  *Id*. at ¶¶ 49-51.  Critically, the alleged failure to fully dispense was *already obvious at each successive repurchase*, lest Plaintiffs would never have realized any basis to post about their dissatisfaction online or telephone L'Oreal to complain.  *E.g*., *id*. at ¶¶ 44, 53, 56, 61, 64.  Nevertheless, they kept buying the products anyway. These repeated purchases evince Plaintiffs' own tacit admission that their experiences conformed to reasonable expectations of viscous cosmetics.  Their actions speak louder than the words of their implausible pleading.

The amended complaint merits dismissal because it does not set out a plausible claim of material deception.  Plaintiffs' subjective disappointment with L'Oreal's packaging design does not equate to defrauding the reasonable cosmetics consumer, nor does it transform L'Oreal's undisputedly accurate labeling of the products' net quantities into any plausible deception.

## III.   Plaintiffs Lack Standing To Seek Injunctive And Declaratory Relief.

Plaintiffs seek corresponding injunctive and declaratory relief.  Dkt. 28, ¶¶ 71, 72, 76(e), 76(f), 82, 101, 112, 130, 140, 155, 173, 182, 190, 194, 203-210, 228; *id*. at 47-48 (prayer), ll. B,

E, J.  However, these claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs lack Article III standing to seek such prospective relief.  Now wise to their alleged deception, they cannot be deceived anew and are unlikely to purchase again, foreclosing the chance of future injury.

To satisfy Article III's standing requirement, a plaintiff must have suffered "concrete and particularized" "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  A plaintiff seeking injunctive or declaratory relief cannot rely on past injury, but must show a likelihood that he or she will again be injured by the challenged conduct in the future.  *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983) (injunctive and declaratory plaintiff failed to "establish a real and immediate threat" of future injury); *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) ("threatened injury [must be] certainly impending") (internal quotations omitted).

Accordingly, in a case of alleged consumer deception, there is no Article III standing for injunctive and declaratory relief where the plaintiff "demonstrated that she is, in fact, unlikely to purchase the challenged products again."  *E.g.*, *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 291 (S.D.N.Y. 2015); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014); 1 MCLAUGHLIN ON CLASS ACTIONS § 4:28 (13th ed.) ("a plaintiff has standing to seek injunctive relief...only if he or she has expressed an intent to purchase the product in the future").

The Second Circuit illustrated the rule in a recent case.  In *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43 (2d Cir. 2018), putative class plaintiff James Kommer alleged that Bayer deceptively marketed Dr. Scholl's shoe inserts in violation of New York General Business

14

Law section 349.  *Id.*  Judge Batts dismissed the demand for injunctive relief for lack of Article III standing.  *Id.*  Reviewing that dismissal de novo, the Second Circuit affirmed.  *Id.* at 44.  Kommer could not establish likelihood of future harm because "he fail[ed] to allege that he intends to purchase the offending product in the future."  *Id.* (internal quotations and brackets omitted).  Rather, "now that he knows of [d]efendants' alleged deception and false advertising," "he is no longer likely to purchase another pair of Dr. Scholl's" shoe inserts.  *Id.*  "Accordingly, he has no standing under Article III to enjoin the defendants' sales practices, and the court properly deemed him precluded from seeking that relief."  *Id.*

Similarly, in *Hidalgo*, the plaintiff's allegation that she would not have purchased the disputed lotion absent deception "effectively assert[ed]" that she will not repurchase it, regardless of whether [Johnson & Johnson's] allegedly deceptive practices are enjoined." *Hidalgo*, 148 F. Supp. 3d at 296; *see Langan v. Johnson & Johnson Consumer Cos*., No. 3:13-cv-1470, 2017 U.S. Dist. LEXIS 35703 at *31-*32 (D. Conn. Mar. 13, 2017) ("Whatever plaintiff may have believed at the time she purchased the sunscreen products, she now understands the true ingredients of the products" and is "no longer deceived," depriving her of standing); *Tomasino*, 44 F. Supp. 3d at 256 (similar); *Casey*, 2018 U.S. Dist. LEXIS 160237 at *23 (allegation that plaintiff would not have purchased absent deception "effectively a concession" that she will not repurchase).

Following the Second Circuit's *Kommer* decision, nearly every district court in this circuit to consider the question has determined that a plaintiff alleging consumer deception cannot establish standing to enjoin the challenged practices in federal court.  *Daniel v. Mondelez Int'l, Inc*., 287 F. Supp. 3d 177, 184-186 (E.D.N.Y. 2018) (citing *Kommer*); *In re Amla Litig*., No. 16-cv-6593-JSR, 2018 U.S. Dist. LEXIS 128987 at *32-*34 (S.D.N.Y. July 31, 2018)

(citing *Kommer* to reverse earlier finding of standing); *Davis v. Hain Celestial Grp., Inc*., No. 17-cv-5191-ARR, 2018 U.S. Dist. LEXIS 56794 at *20-*21 (E.D.N.Y. Apr. 3, 2018) (if "plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way"); *Alce v. Wise Foods, Inc*., No. 17 Civ. 2402 (NRB), 2018 U.S. Dist. LEXIS 54009 at *15-*18 (S.D.N.Y. Mar. 27, 2018); *Daniel v. Tootsie Roll Indus., LLC*, 2018 U.S. Dist. LEXIS 129143 at *16-*18 ; *Casey,* 2018 U.S. Dist. LEXIS 160237 at *22-*25; *Tomassini v. FCA US LLC*, No. 3:14-cv-1226 (MAD/DEP), 2018 U.S. Dist. LEXIS 131459 at *30-*34 (N.D.N.Y. Aug. 6, 2018); *Rodriguez v. Hanesbrands, Inc*., No. 17-CV-1612 (DLI), 2018 U.S. Dist. LEXIS 28002 at *23-*28 (E.D.N.Y. Feb. 20, 2018) (citing *Kommer*).   An exception did not take note of *Kommer* because briefing in that case concluded in March 2017, ten months before *Kommer*.  *Petrosino v. Stearn's Prods*., No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818 at *8-*12 (S.D.N.Y. Mar. 30, 2018).[2]

---

[2] Even prior to the Second Circuit's *Kommer* decision, district courts in this circuit lopsidedly held that consumers alleging deception have no injunctive or declaratory standing.  *E.g*., *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) ("weight of authority in this Circuit" holds no standing); *Hidalgo,* 148 F. Supp. 3d at 296; *Tomasino,* 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014); *Langan,* 2017 U.S. Dist. LEXIS 35703 at *31-*32; *In re Avon Anti-Aging Skincare Creams & Procs. Mktg. & Sales Practices Litig*., No. 13-CV-150 (JPO), 2015 U.S. Dist. LEXIS 133484 at *8 (S.D.N.Y. Sep. 30, 2015); *Singleton v. Fifth Generation, Inc*., No. 5:15-CV-474 (BKS), 2017 U.S. Dist. LEXIS 170415 at *45-47 (N.D.N.Y. Sep. 27, 2017); *Atik v. Welch Foods, Inc*., No. 15-CV-5405 (MKB), 2016 U.S. Dist. LEXIS 136056 at *11-20 (E.D.N.Y. Sep. 30, 2016); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(JS), 2015 U.S. Dist. LEXIS 63464 at *7-8 (E.D.N.Y. May 14, 2015); *Sitt v. Nature's*

This complaint forecloses as a matter of law any finding that Plaintiffs are sufficiently likely to repurchase the products as to confer standing for prospective injunctive and corresponding declaratory relief. These Plaintiffs not only fail to allege any likelihood of repurchasing the products, but they clearly and repeatedly assert that they would not have purchased the products if they knew then what they know now. Dkt. 28, ¶ 14 ("Had Plaintiffs known [of their alleged deception], Plaintiffs would not have purchased"); *id*. at ¶ 69 (same); *id*. at ¶ 98 ("Plaintiffs and Class members would not have purchased the products"); *id*. at ¶ 126; *id*. at ¶ 127 (Plaintiffs "were induced to make purchases that they otherwise would not have"); *id*. at ¶ 165 ("Plaintiff Critcher and Texas Subclass members [induced] into a transaction which they would not have entered had the information been disclosed"); *id*. at ¶ 215 ("they have purchased Liquid Cosmetic Products they would not have otherwise purchased"). These allegations function as admissions that Plaintiffs will not repurchase the products (*Hidalgo*, 148 F. Supp. 3d at 296), irretrievably placing the injunctive and declaratory demands outside Article III. *Kommer*, 710 Fed. App'x at 43; *Tomasino*, 44 F. Supp. 3d at 256; *Casey,* 2018 U.S. Dist. LEXIS 160237 at *23. Moreover, four Plaintiffs made special efforts to disparage the products online or protest directly to L'Oreal. Dkt. 28, ¶ 44 ("Very disappointed!!"); *id*. at ¶ 53 ("Waste of money); *id*. at ¶ 53 (online complaint); *id*. at ¶ 61 ("45 minutes calling" L'Oreal). None of them have alleged, let alone plausibly, the slimmest likelihood of being deceived anew into future purchases of these products, nor can they, as they are now fully wise to their alleged deception and outraged enough to file suit.

---

*Bounty, Inc*., No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564 at *59-*60 (E.D.N.Y. Sep. 26, 2016).

L'Oreal anticipates that Plaintiffs will argue that their injunctive claims should proceed to in order to vindicate the public policy behind consumer protection statutes. However, "[r]egardless of the salutary purpose of consumer protection statutes, they cannot alter the bedrock requirements for federal constitutional standing." *Langan*, 2017 U.S. Dist. LEXIS 35703 at *33-*34 (statutes' purpose can be vindicated in state courts not subject to Article III standing requirements). Consumer protection statutes, no matter how broad or salutary, do not abrogate the Constitution's requirement that injunctive plaintiffs face an injury in fact that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-561. Nor can the Court relax Article III's standing requirement simply because Plaintiffs filed a putative class action. *Amchem Prods. v. Windsor,* 521 U.S. 591, 613 (1997) (Rule 23 "must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right'"); 28 U.S.C. § 2072(b); FED. R. CIV. P. 82 ("These rules do not extend…the jurisdiction of the district courts"). Plaintiffs' injunctive and declaratory remedies, if any, lie in state court.

## IV.   Each Plaintiff Lacks Standing To Assert Claims Related To Products She Did Not Purchase.

Plaintiffs did not purchase the RevitaLift Moisturizer or the SuperStay Foundation. Dkt. 28, ¶¶ 42, 47, 49, 54, 57, 62, 65, 67. No Plaintiff holds standing to assert claims related to those products because it is impossible that such products injured Plaintiffs in any sense relevant to Article III. *Lujan,* 504 U.S. at 560-561 (standing requires "concrete and particularized" "injury in fact" that is "actual or imminent, not conjectural or hypothetical"). And, as for class standing, each Plaintiff could at most have standing to assert claims of others with regard to products each Plaintiff actually purchased. *Dimuro v. Clinique Labs*., LLC, 572 Fed. App'x 27, 29 (2d Cir. 2014) (affirming dismissal of claims relating to products that putative class plaintiffs did not

purchase because "differing ingredients" and other considerations showed the challenged products could not raise a "nearly identical" "set of concerns"); *Hart v. BHH, LLC*, No. 15cv4804, 2016 U.S. Dist. LEXIS 59943 at *8-*10 (S.D.N.Y. May 5, 2016) (dismissing claims related to "Animal Repeller" products for lack of standing because they "would not raise nearly identical concerns" to the claims of plaintiffs, who purchased "Pest Repellers"); *id*. at *10 ("unique evidence would be required to prove that Defendants' statements regarding both products were actually false or misleading").

Where their whole theory of liability depends on a supposed dispensing pump defect that allegedly rendered the quantity labeling deceptive, nowhere do Plaintiffs allege that the products even share the same pumps. It is obvious from the packaging that they do not. Exs. A, B, C, D (packaging examples).[3] Nor do Plaintiffs allege that the various pumps suffer from the same or even similar defects. This is because the complaint does not plead any identifiable dispensing defect in any of the four pumps, but simply labels them "defective" and "ineffective." Dkt. 28, ¶¶ 2, 5, 12, 33. Rather, Plaintiffs themselves claim that the four pumps behave in significantly different ways within an alleged range of dispensed volume that spans from 43% to nearly double that, or 81%. *Id*. at ¶ 39. The pumps serve four different types of cosmetic products with different purposes and varying consumer expectations, including sunscreen, foundation, moisturizer, and eye cream. Plaintiffs do not allege that these various substances share the same or even similar compositions or exhibit uniformity in physical traits like density or degree of

---

[3] Though two products share similar dispensing heads, their pump assemblies tap reservoirs varying by 100% in volume with pump intake tubes of consequently differing length. Ex. C (RevitaLift Moisturizer packaging stating 1.0 fl. oz.); Ex. B (Age Perfect Eye Cream packaging stating 0.5 fl. oz.).

viscosity. *Id.* at ¶ 5 (alleging viscosity as trait central to pumps' supposed insufficiency); *id.* at ¶¶ 6, 9, 32, 38 (similar). In fact, each of the pumps dispenses a dissimilar type of substance with differing ingredients and correspondingly disparate physical traits. Exs. A, B, C, D (examples of packaging, including markedly differing ingredient lists); dkt. 28, ¶ 30 (even admitting differing "version[s]" within the same product). Although all four products' pumps can be readily observed by consumers in the store, two of the products' bottles sit within unsealed paper cartons, while two others stand alone. Of the two with cartons, one carton displays its product through a plastic window, while the other does not. Three of the four products' reservoirs are clear glass, but the other one is opaque. Taken together, these accumulated dissimilarities mean the liability analysis for each product would be almost completely separate. *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (no standing to assert class claims because "answering [liability] questions for the trusts in which Plaintiffs invested [would not] answer the same questions" for the "trusts in which they did not invest").

In short, even if the Court could set aside Plaintiffs' lack of any Article III injuries-in-fact from products they did not purchase, cumulative disparities among the four different products preclude any attempt by these Plaintiffs to plead claims on behalf of others who did.

## V.     New York Law Cannot Apply Nationwide Nor Be Asserted By Non-New York Purchasers.

In this diversity action (dkt. 28, ¶ 26), the Court applies New York choice-of-law rules to determine the applicable state substantive law. *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016). New York's choice-of-law analysis forecloses Plaintiffs' contention that New York's common law and consumer statutes could apply nationwide to all consumers' purchases of allegedly deceptive products. Under New York choice-of-law rules, the law of every state

where each consumer resides or purchased product must apply due to significant state-by-state differences in the law of consumer fraud, warranty, and unjust enrichment. *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D 139, 146-150 (S.D.N.Y. 2008). The same holds for negligent misrepresentation. *Hughes v. Ester C Co.*, 317 F.R.D 333, 352-353 (E.D.N.Y. 2016) ("significant variations" in state laws of negligent misrepresentation and unjust enrichment); *Intellivision v. Microsoft Corp.*, No. 07 Civ. 4079 (JGK), 2008 U.S. Dist. LEXIS 63564 at *14-*16 (S.D.N.Y. Aug. 20, 2008) ("because elements of [negligent misrepresentation] are based on conduct regulating rules, New York courts would apply the law of the place of tort" in light of states' variations in law).

Nonetheless, the complaint asserts five causes of action purporting to wield New York law on behalf of all purchasers nationwide. These include counts one and two alleging violation of New York's General Business Law, as well as counts ten, twelve, and thirteen alleging unjust enrichment, breach of implied warranty, and negligent misrepresentation, respectively. Those claims each require dismissal with prejudice to the extent asserted by Plaintiffs other than Petrie or on behalf of a purported "Nationwide Class under New York law." Dkt. 28 at 24, 27, 42, 45, 46 (headings).

**VI.    The Unjust Enrichment Claims Require Dismissal.**

**A.    The Unjust Enrichment Claims Are Impermissibly Duplicative.**

Plaintiffs' New York, Florida, and Texas unjust enrichment claims impermissibly duplicate the other contract, tort, and statutory causes of action. *Ebin v. Kangadis Food, Inc.*, No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 174174 at *18-*19 (S.D.N.Y. Dec. 9, 2013) (dismissing New York unjust enrichment claim because plaintiffs "failed to explain how their unjust enrichment claim is not merely duplicative of the their other causes of action," as "claim

will not lie 'where it simply duplicates, or replaces, a conventional contract or tort claim'" (quoting *Corsello v. Verizon New York, Inc*., 18 N.Y.3d 777 (N.Y. 2012)); *Sitt v. Nature's Bounty, Inc*., No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564 at *59-*60 (E.D.N.Y. Sep. 26, 2016) (N.Y. unjust enrichment claim failed because it duplicated G.B.L. section 349 and warranty claims); *see also Licul v. Volkswagen Group of Am*., No. 13-61686, 2013 U.S. Dist. LEXIS 171627 at *19-*21 (S.D. Fla. Dec. 5, 2013) (dismissing Florida unjust enrichment claim "as duplicative of the other counts in the [c]omplaint"); *Nichols v. Wm. Wrigley Jr. Co*., No. 10-80759, 2011 U.S. Dist. LEXIS 4959 at *18 (S.D. Fla. Jan. 19, 2011) (same); *In re GMC LLC Ignition Switch Litig*., 257 F. Supp. 3d 372, 455 (S.D.N.Y. 2017) (Texas unjust enrichment theory was "duplicative of [plaintiffs'] other claims and must be dismissed").

Here, Plaintiffs' unjust enrichment allegations entirely echo and impermissibly duplicate their other claims.  Identically to the warranty, misrepresentation, and statutory claims, the unjust enrichment claim's sole factual basis is alleged quantity deception predicated on a supposed dispensing defect.  Dkt. 28, ¶¶ 195-202; *Trainum v. Rockwell Collins, Inc*., No. 16-cv-7005 (JSR), 2017 U.S. Dist. LEXIS 83260 at *63 (S.D.N.Y. May 30, 2017) (duplicative if allege same "wrongful conduct"); *Licul*, 2013 U.S. Dist. LEXIS 171627 at *19 (dismissing where claims had "same factual predicates"); *Nichols*, 2011 U.S. Dist. LEXIS 4959 at *18 ("exact same wrongful conduct").  Dismissal is warranted.

### B.   Adequate Legal Remedies Preclude Unjust Enrichment Claims.

Unjust enrichment under New York law "is an equitable claim that is unavailable where an adequate remedy at law exists."  *In re GM LLC Ignition Switch Litig*., 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (citing *Fed. Treasury Enter. Sojuzplodoimport v. Sprits Intl. N.V*., 400 Fed.

Appx. 611, 613-614 (2d Cir. 2010); *Norris v. Grosvenor Mktg.*, 803 F.2d 1281, 1287 (2d Cir.

1986); *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70, 79 (N.Y. 2008).

Extant legal remedies also doom Florida unjust enrichment claims. *Weaver v. Mateer &*

*Harbert, P.A.*, No. 5:09-cv-514-Oc-34TBS, 2012 U.S. Dist. LEXIS 104771 at *56 (M.D. Fla.

Jul. 27, 2012) (claim barred due to pleading of adequate remedy at law); *Nichols*, 2011 U.S. Dist.

LEXIS 4959 at *18 (same); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-1237 (S.D. Fla.

2007) ("plaintiffs do not plead that they lack an adequate legal remedy"); *Am. Honda Motor Co.,*

*Inc. v. Motorcycle Info. Network, Inc.*, 390 F.Supp.2d 1170, 1178 (M.D. Fla. 2005) ("well settled

in Florida that unjust enrichment is an equitable remedy" "not available where there is an

adequate legal remedy," such that "a party must allege that no adequate legal remedy exists");

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*, No. 3:16-cv-186, 2018 U.S.

Dist. LEXIS 24920 at*37 (M.D. Fla. Feb. 15, 2018) (a Florida "claim for unjust enrichment is

equitable in nature, and thus, is not available when there is an adequate legal remedy"); *Vazquez*

*v. GM, LLC*, No. 17-22209, 2018 U.S. Dist. LEXIS 6875 at *16 (S.D. Fla. Jan. 16, 2018) (same).

The same goes for Texas, Kansas, Nevada, and Michigan. *In re GMC LLC Ignition*

*Switch Litig.*, 257 F. Supp. 3d at 455  (Texas unjust enrichment theory "fall[s] short because

[plaintiffs] have an adequate remedy at law"); *Nelson v. Nelson*, 288 Kan. 570, 597, 205 P.3d

715, 734 (2009) (affirming summary judgment on unjust enrichment claim based on existence of

adequate statutory remedy); *Small v. Univ. Med. Ctr. of S. Nev.*, No. 2:13-cv-298-APG-PAL,

2016 U.S. Dist. LEXIS 102508 at *7-*9 (D. Nev. Aug. 3, 2016) (dismissing unjust enrichment

claims because "Nevada recognizes the general rule that an equitable claim, like unjust

enrichment, is not available" if adequate legal remedy available); *Tkachik v. Mandeville*, 487

Mich. 38, 52 (2010); *Duffie v. Mich. Group. Inc.-Livingston*, No. 14-cv-14148, 2016 U.S. Dist. LEXIS 186829 at *3 (E.D. Mich. Jan. 15, 2016) (Michigan law).

The Court cannot credit Plaintiffs' conclusory allegation that they lack adequate legal remedies.  Dkt. 28, ¶ 208.  It is not supported by any accompanying factual allegations and cannot satisfy minimum plausibility.  Plaintiffs hardly face grave crises that threatened or inflicted irreparable injuries.  They simply claim they overpaid for makeup despite admitting they received every milliliter they paid for.  *Id*. at ¶ 5.  Indeed, Plaintiffs already assert multiple adequate remedies at law, including damages for claims of warranty, negligent misrepresentation, and statutory violations.  They cannot plausibly allege that the legal remedy of money damages will not make them whole.  Accordingly, the unjust enrichment claims fail as a matter of law.

### C.    Unjust Enrichment Is Not A Cause Of Action In Texas.

In addition, Critcher's unjust enrichment claim fails because, in Texas, unjust enrichment is not a separate and distinct cause of action.  *Hancock v. Chi. Title Ins. Co*., 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009); *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246-47 (Tex. Ct. App. 2007).

### VII.   The Implied Warranty Claims Should Not Proceed.

### A.    Plaintiffs Cannot Plausibly Allege The Products Are Unfit for Sale.

Plaintiffs cannot plausibly allege that the products are so patently unfit for sale as to offend the implied warranty of merchantability.  *See*, *e.g.*, *Feliciano v. GM, LLC*, No. 14 Civ. 6374 (AT), 2016 U.S. Dist. LEXIS 194728 at *19 (S.D.N.Y. Mar. 31, 2016) ("Merchantable is not a synonym for perfect.  The warranty of merchantability is that goods are of average quality in the industry."); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig*., No. 03-4558, 2008 U.S.

Dist. LEXIS 73690 at *59-*60 (D.N.J. Sep. 3, 2008) ("Merchantability does not mean that the goods are perfect or that they are exactly as the merchant described"); *Morrison v. Hoffman-LaRoche, Inc.*, No. 14-cv-4476 (DLI), 2016 U.S. Dist. LEXIS 135291 at *31 (E.D.N.Y. Sep. 29, 2016) (merchantability requires only "a minimal level of quality").

They do not allege that the makeup failed to beautify their skin or protect it from sunburn.  Rather, the complaint is replete with indications of the products' cosmetic excellence. *E.g.*, dkt. 28 at 9, ¶ a ("I don't have any complaints about the make up — I actually prefer it"); *id*. at ¶ b ("This is fabulous foundation"); *id*. at ¶ c ("Love the foundation"); *id*. at 10, ¶ a ("good" makeup); *id*. at 11, ¶ b (RevitaLift is a "Great formula"); *id*. at ¶ a (Age Perfect Eye Cream "is nice"); *id*. at 12, ¶ a ("Love the product"); *id*. at ¶ b ("Great product").

Plaintiffs' allegation that the products' dispensing pumps do not expel all of the makeup residue does not render the products wholly unmerchantable.  The operative complaint contains nothing to place that alleged trait in context within the relevant trade of liquid cosmetics.  *See* dkt. 28, ¶ 7 (no context among other cosmetics or consumer products with pump dispensers). Instead, Plaintiffs admit that these products, like virtually all liquid cosmetics, are viscous and that viscous cosmetics generally remain adherent to the interior surfaces of their bottles.  *Id*. at ¶ 5; *id.* at ¶ 6 ("viscous liquids frequently stick to the sides of the containers").  If anything, then, the complaint actually places these products somewhere in general conformance with the trade, rather than plausibly exiling them from the cosmetic trade as uniquely unfit for sale.

Moreover, Plaintiffs' own repeat purchases demonstrate not just satisfaction with the products' undisputed cosmetic excellence, but also show that Plaintiffs regarded them as worthy of repeat purchases even if, like other liquid cosmetics, some of the viscous residue remained

inside.  Plaintiffs' repeated purchases foreclose plausible allegation that the products are somehow wholly unfit for sale among viscous liquid cosmetics, joining the other considerations requiring dismissal of the claim for breach of implied warranty of merchantability.

**B.      Plaintiffs Have No Contractual Privity With L'Oreal.**

The Court should dismiss the implied warranty claims of Marynovsky, Clark-Sheppard, and Belbot under the respective laws of Florida, Kansas, and Nevada because those claims fail for lack of contractual privity.

"Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty." *Foster v. Chattem, Inc.*, No. 6:14-CV-346-ORL-37, 2014 U.S. Dist. LEXIS 100994, 2014 WL 3687129, at *2 (M.D. Fla. July 24, 2014); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008); *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. Dist. Ct. App. 2006) (affirming dismissal of breach of implied warranty claim by vehicle purchaser for lack of privity); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) ("[A] plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *see also Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 895 (11th Cir. 2006) (reasoning, under Florida law, that "the absence of privity between [plaintiff] and [defendant] is dispositive: [plaintiff's] claim of breach of implied warranty fails as a matter of law").

Kansas and Nevada also require an implied warranty plaintiff to plead and prove privity. *Finnerty v. Howmedica Osteonics Corp.*, No. 2:14-cv-00114-GMN-GWF, 2016 U.S. Dist. LEXIS 123071 at *21-*22 (D. Nev. Sep. 12, 2016) (granting summary judgment because Nevada implied warranty claim "requires contractual privity between the buyer and seller"); *Phillips v. C.R. Bard, Inc.*, No. 3:12-cv-344-RCJ-WGC, 2014 U.S. Dist. LEXIS 174506 at *24-

*25 (D. Nev. Dec. 16, 2014) (same); *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 755 (Kan. 1984) (Kansas requires privity for implied warranty claims alleging merely economic loss).

Plaintiffs Marynovsky, Clark-Sheppard, and Belbot do not adequately plead privity of contract with L'Oreal in more than conclusory terms, nor can they.  Dkt. 28, ¶¶ 47, 49, 54 (each pleads that she purchased at "a retail store," not from L'Oreal); *cf. id*. at ¶ 214 (legal conclusion). Accordingly, the Florida, Kansas, and Nevada warranty claims fail for lack of privity.

### C.   Critcher, Clark-Sheppard, Feiges, and Fournier Afforded L'Oreal No Pre-Suit Notice.

Critcher's implied warranty claim requires dismissal because she fails to plead that she provided L'Oreal any notice or opportunity to cure prior to filing suit, an indispensable matter of Texas law.  TEX. BUS. & COM. CODE § 2.607(c)(1)  ("[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 970 (S.D. Tex. 2016); *Massey v. Novartis Pharm. Corp.*, 46 F. Supp. 3d 688, 692 (W.D. Tex. 2014).  Filing suit does not itself satisfy the notice requirement.  *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 202 (Tex. App. 2003); *see also McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 706 (5th Cir. 2014).  "The burden of alleging and proving notice under [section] 2.607(c)(1) is properly placed on the buyer," because the "notice requirement is…a condition precedent for a buyer's cause of action."  *U.S. Tire-Tech*, 110 S.W.3d at 200.   The Michigan and Maryland notice statutes governing Fournier and Feiges's respective claims are identical to that of Texas, requiring pre-suit notice.  MICH. COMP. LAWS SERV. § 440.2607(3)(a) ; *Gorman v. Am. Honda Motor Co*., 302 Mich. App. 113, 123-124 (Mich. Ct. App. 2013); *Rosipko v. FCA US, LLC*, No. 15-11030, 2015 U.S. Dist. LEXIS 163455 at *16 (E.D. Mich. Dec. 7, 2015); MD. CODE ANN., COM. LAW § 2-

607(3)(a) ; *Doll v. Ford Motor Co*., 814 F. Supp. 2d 526, 542 (D. Md. 2011).  Notice is also an element of the implied warranty claim Clark-Sheppard alleges under Missouri law.  *Johnsen v. Honeywell Int'l,, Inc.*, No. 14-cv-594, 2015 U.S. Dist. LEXIS 17204 at *13 (E.D. Mo. Feb. 12, 2015); *Hope v. Nissan N. Am., Inc.* 353 S.W.3d 68, 90 (Mo. Ct. App. 2011).

Nowhere do Critcher, Fournier, Feiges, or Clark-Sheppard contend that they provided anyone the requisite notice.  *See* dkt. 28, ¶¶ 42-48, 62-66.  The complaint merely alleges that "Defendant was provided notice of these issues by numerous complaints lodged by consumers." *Id*. at ¶ 218.  However, even if the Court could credit that conclusory allegation, any such generic notice would not suffice.  Rather, "[t]he manufacturer must be made aware of a problem with a particular product purchased by a particular buyer."  *U.S. Tire-Tech*, 110 S.W.3d at 202 (Texas law); *Hope*, 353 S.W.3d at 92 (individual determinations necessary to ascertain "whether *each individual* class member notified Nissan" of alleged defect underlying Missouri implied warranty claim) (emphasis added).   The Texas, Michigan, Maryland, and Missouri warranty claims therefore require dismissal.

## VIII.   The Negligent Misrepresentation Claim Also Requires Dismissal.

### A.   Negligent Misrepresentation Claims Fail For Lack of Privity or Special Relationship.

Plaintiffs cannot plead negligent misrepresentation under New York law because they cannot plausibly allege that they hold contractual privity or any special relationship with L'Oreal.  *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) ("New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity."); *Mahoney v. Endo Health Solutions, Inc.,* No. 15-cv-9841 (DLC), 2016 U.S. Dist. LEXIS 94732 at *8-*11 (S.D.N.Y. July 20, 2016) (no special or privity-like relationship alleged between ordinary

consumer and manufacturer where fluoride tablets allegedly contained less fluoride than stated on the product labels); *Tyman v. Pfizer, Inc.*, No. 16-cv-6941 (LTS) (BCM), 2017 U.S. Dist. LEXIS 212879 at *35-*43 (S.D.N.Y. Dec. 27, 2017) (similar).  Maryland similarly requires an "intimate nexus between the parties" such as "contractual privity."  *Jacques v. First Natl. Bank*, 307 Md. 527, 534-535 (Md. Ct. App. 1986).  Nevada also requires a special relationship for negligent misrepresentation claims predicated, as here, on alleged omissions.  *In re Agribiotech, Inc.,* 291 F. Supp. 2d 1186, 1191-92 (D. Nev. 2003).  However, Plaintiffs can plead no more than arms-length consumer purchases from indirect retail stores, not L'Oreal, that are insufficient for a negligent misrepresentation claim.  Dkt. 28, ¶¶ 42-68.

> **B.** **New York, Florida, Texas, Kansas, Michigan, and Maryland Negligent Misrepresentation Claims Are Barred By The Economic Loss Doctrine.**

The complaint seeks recovery merely of economic losses tied to Plaintiffs' allegedly unmet expectations about the products they purchased.  Plaintiffs cannot recover such purely economic losses by way of New York, Florida, Texas, Kansas, Michigan or Maryland negligent misrepresentation claims because such recoveries are prohibited by the economic loss doctrine. *Tyman*, 2017 U.S. Dist. LEXIS 212879 at *44-*48 (Florida); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(JS), 2015 U.S. Dist. LEXIS 63464 at *27 (E.D.N.Y. May 14, 2015) (New York); *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 799 (Tex. Ct. App. 2007); *Ritchie Enterprises v. Honeywell Bull*, Inc., 730 F. Supp. 1041, 1052 (D. Kan. 1990); *Snyder v. Boston Whaler*, 892 F. Supp. 955, 960 (W.D. Mich. 1994); *Moczulski v. Ferring Pharms., Inc.*, No. 18-1094, 2018 U.S. Dist. LEXIS 121341 at *9-*10 (D. Md. July 19, 2018).

> **IX.** **Statutory Claims Fail For Additional Reasons.**

> **A.** **Critcher Does Not Plead The Notice Required By Texas's Consumer Statute.**

As a condition precedent, the Texas consumer statute required Critcher to give L'Oreal

written pre-suit notice of her claim, to include specific valuations of her alleged damages and fees. TEX. BUS. & COM. CODE § 17.505(a); *Investors, Inc. v. Hadley*, 738 S.W.2d 737, 741-42 (Tex. Ct. App. 1987). Because Critcher pleads no such notice to L'Oreal, her statutory claim requires dismissal. Dkt. 28, ¶¶ 42-46; *id*. at ¶ 160 (conceding no pre-suit notice and merely invoking filing of original complaint as notice).

### B.  Clark-Sheppard Purchased In Kansas, Not Missouri.

The Missouri statutory claim must be dismissed with prejudice because Clark-Sheppard purchased her product in Kansas. Dkt. 28, ¶ 47. The Missouri consumer statute applies only to deceptive practices taking place "in or from the state of Missouri." MO. REV. STAT § 407.020(1).

### CONCLUSION

Plaintiffs undisputedly received every milliliter of makeup they paid for, but assert an implausible cosmetic quantity labeling theory that impermissibly seeks to expand upon the preemptive requirements of federal law on that very subject. The entire complaint requires dismissal with prejudice.

Dated:  October 9, 2018

GORDON & REES, SCULLY, MANSUKHANI LLP

By:  *s/ Justin D. Lewis*
Miles D. Scully (*pro hac vice* application pending)
Peter G. Siachos
Justin D. Lewis (*pro hac vice* application pending)
JoAnna M. Doherty

1 Battery Park Plaza, 28th floor
New York, New York 10004
T:  (212) 269-5500
E:  jlewis@grsm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this memorandum contains 9,171 words in compliance with the 10,000-word limit the Court granted for this memorandum and conforms to the formatting rules set out in Judge Koeltl's individual rules of practice.

Dated:  October 9, 2018

GORDON & REES, SCULLY, MANSUKHANI LLP

By:    *s/ Justin D. Lewis*
       Miles D. Scully (*pro hac vice* application pending)
       Peter G. Siachos
       Justin D. Lewis (*pro hac vice* application pending)
       JoAnna M. Doherty

1 Battery Park Plaza, 28th floor
New York, New York 10004
T:  (212) 269-5500
E:  jlewis@grsm.com