USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/11/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARY TULLIE CRITCHER ET AL.,

                  Plaintiffs,

- against -

L'OREAL USA INC., ET AL.,

                  Defendants.

---

18-cv-5639 (JGK)

MEMORANDUM OPINION &
ORDER

JOHN G. KOELTL, District Judge:

The plaintiffs -- Mary Tullie Critcher, Twoana Clark-Sheppard, Victoria Marynovsky, Patrica Belbot, Jessica Petrie, Linda Feiges, Sarah McQueary, and Georgette C. Fournier -- are consumers of liquid cosmetics that are marketed and sold by defendant L'Oréal USA, Inc. ("L'Oréal").[1] The plaintiffs bring this putative class action under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 et seq., and various state consumer protection statutes. The plaintiffs also bring claims of unjust enrichment and breach of the implied warranty of merchantability. The plaintiffs allege that four of the defendant's products are deceptively labeled because they fail to make clear that the cosmetics dispensers will leave a significant amount of the product in the containers.

---

[1] ATC Associates Inc. and ATC Group Services, LLC are also listed as defendants on the docket. Because these defendants are not discussed in the second amended complaint, the nature of the plaintiffs' claims against these defendants is unclear.

L'Oréal moves to dismiss the entire second amended complaint ("SAC") on grounds of federal preemption, lack of standing, and failure to meet the operative pleading standards. For the reasons explained below, the L'Oréal's motion to dismiss the SAC is **granted**.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a

court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

**II.**

The following facts are taken from the SAC and are accepted as true for purposes of this motion.

The plaintiffs are consumers of defendant L'Oréal's cosmetic products. There are four products at issue in this case -- L'Oréal Visible Lift Serum Absolute, L'Oréal Age Perfect Eye Renewal Eye Cream, L'Oréal Revitalift Bright Reveal Brightening Day Moisturizer, and Maybelline Superstay Better Skin Skin-Transforming Foundation (collectively, the "products"). Of these four products, the plaintiffs only purchased the Visible Lift Serum and Age Perfect Eye Cream. SAC ¶¶ 47, 50, 52, 54-56, 59, 62, 70, 72.

The products are sold in sealed bottles, which are often made of glass. Id. ¶ 8. Consumers access the products through a

3

pump. Id. ¶ 7. The plaintiffs agree that the containers for each of the products accurately state the total amount of the product packaged inside the container, but nonetheless contend that the labels are misleading because the pumps fail to dispense a significant amount of the viscous cosmetics. Id. Because the product containers are sealed shut, consumers are unable to remove the pumps safely to access the remaining product. Id. ¶ 8.

Plaintiff Critcher purchased Visible Lift Serum Absolute in June 2016 and paid approximately $13. Id. ¶ 47. Critcher was unable to use all of the liquid foundation that she purchased because it could not be dispensed completely from the container. Id. ¶ 48. However, because Critcher assumed that the first container that she purchased was uniquely defective, she bought the same product again in 2017. Id. ¶ 50. Again, Critcher was unable to access all of the liquid foundation that she purchased because it could not be completely dispensed. Id. ¶ 51. The remaining plaintiffs all had similar experiences with their L'Oréal purchases. Id. ¶¶ 52-74. Some of the plaintiffs were only able to access half of the product that they purchased. Id. ¶¶ 7, 19, 43, 53, 58, 73.

Many consumers have complained on L'Oréal's website about their inability to access the products. Id. ¶¶ 13-14, 39. L'Oréal has acknowledged these complaints, but has not fixed its

4

packaging or changed its product labels. Id. ¶¶ 14, 16, 38, 40. The plaintiffs claim that if they had known that they would not be able to access significant amounts of the products because of the packaging, they would not have purchased the products. Id. ¶¶ 19, 74.

Accordingly, the plaintiffs brought this putative class action, alleging that L'Oréal's products are deceptively labeled. Counts I through IX allege violations of various state consumer protection statutes. Count X alleges a claim for unjust enrichment, Count XI seeks declaratory and injunctive relief, and Count XII pleads a breach of the implied warranty of merchantability.

### III.

#### A.

L'Oréal argues that the plaintiffs' claims are preempted by federal law, which requires that L'Oréal label its cosmetic products packaging with the entire net quantities of their contents. L'Oréal argues that these requirements preempt the theory underlying the plaintiffs' state law claims -- that L'Oréal misled the plaintiffs by "fail[ing] to disclose to consumers that they will not be able to access or use a large percentage . . . of the product purchased." Id. ¶ 7.

The Federal Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 et seq., "sets out a comprehensive statutory

5

framework for regulating the development and marketing of food, drugs, and cosmetics." Bowling v. Johnson & Johnson, 65 F. Supp. 3d 371, 374 (S.D.N.Y. 2014). "The FDCA was enacted in 1938 as part of a comprehensive federal regulatory scheme to protect consumers from fraud or misrepresentation in the sale of food, drugs, and cosmetics." O'Connor v. Henkel Corp., No. 14cv5547, 2015 WL 5922183, at *3 (E.D.N.Y. Sept. 22, 2015). The United State Food and Drug Administration ("FDA") has authority to promulgate regulations enforcing the FDCA. Id.; 21 U.S.C. § 371(a).

Pursuant to this regulatory authority, FDA regulations require that the "label of a cosmetic in package form shall bear a declaration of the net quantity of contents." 21 C.F.R. § 701.13(a). The plaintiffs agree that L'Oréal's products comply with this requirement, because their labels accurately state the net weight of the product contained in the containers.

The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl.2. "[S]tate law is naturally preempted to the extent of any conflict with a federal statute." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000). That is, preemption exists "where it is impossible for a private party to comply with both state and federal law." Id. The FDCA expressly

6

preempts any state law setting forth a "requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under [the FDCA] . . . or the Fair Packaging and Labeling Act [('FPLA')], (15 U.S.C. § 1451 et seq.)." 21 U.S.C. § 379s. The FPLA also carries its own provision expressly preempting state law that differs from FPLA labeling requirements. See 15 U.S.C. § 1461 (stating that "it is the express intent of Congress to supersede any and all laws of the States . . . insofar as they may now or hereafter provide for the labeling of the net quantity of contents of the package of any consumer commodity . . . which are less stringent than or require information different from the requirements of section 1453 of this title or regulations promulgated pursuant thereto").

Based on these provisions, preemption is "appropriate when a state law prohibits labeling that is permitted under federal law. But it is also appropriate when a state law prohibits labeling that is not prohibited under federal law. The standard, in other words, is not whether a state law actively undermines federal law. It is whether state law diverges from federal law at all." See Bowling, 65 F. Supp. 3d at 375. Plaintiffs can "escape the preemptive force of the FDCA only if their claims

7

seek to impose requirements that (1) are identical to those imposed by the FDCA, or (2) are outside the scope of the relevant federal requirements." O'Connor, 2015 WL 5922183, at *5.

In this case, the plaintiffs' alleged injury flows directly from the labeling of L'Oréal's products. These claims are preempted because the "federal regulatory scheme addresses measurement and labeling of product quantity head-on." Id. Not only did federal law permit L'Oréal to label its cosmetic products with the net quantity of the containers' contents irrespective of the amount that was accessible through the pumps, but federal law also required such labeling. By asserting that L'Oréal should have also informed consumers that they would not be able to access all of the product contained in the packaging, the plaintiffs seek labeling that is "different from or in addition to," the requirements set forth in the FDCA. 21 U.S.C. § 379s. Such claims are expressly preempted.

The plaintiffs attempt to escape the FDCA's preemptive force in two ways. First, the plaintiffs cite a provision of the FDCA that states that cosmetic labels may not be "false or misleading in any particular." See 21 U.S.C. § 362(a). The plaintiffs argue that their claims are consistent with federal law because L'Oréal's labels are misleading. Second, the plaintiffs assert that they are not seeking additional labeling

8

but, rather, they are seeking damages for past harms inflicted by L'Oréal's alleged deception. Neither argument is persuasive.

The FDCA broadly states that a "cosmetic shall be deemed to be misbranded if its labeling is false or misleading in any particular." Id. This broad provision does not override the FDCA's more specific requirements for cosmetic labels. See Canale v. Colgate-Palmolive Co., 258 F. Supp. 3d 312, 320 (S.D.N.Y. 2017). If § 362(a) "were the only federal requirement" related to the plaintiffs' claims, the plaintiffs' claims might not be preempted. See id. However, other provisions of the FDCA "specifically regulate[] the subject matter of [the] plaintiff[s'] state law claims, and those claims seek to impose requirements not identical to federal requirements."[2] Id.

---

[2] The plaintiffs rely on a decision from the Ninth Circuit Court of Appeals, Ebner v. Fresh, Inc., 838 F.3d 958 (9th Cir. 2016), to argue that their claims are not preempted by the FDCA. In Ebner, the Court of Appeals explained that the plaintiff's claim -- that a lip balm label was misleading because it did not contain a supplemental statement that some product would remain in the container -- was not preempted by the FDCA because, unlike in this case, the state law upon which the plaintiff relied was "virtually identical" to § 362(a) of the FDCA. Id. at 965 (explaining that "the state-law duty that Plaintiff seeks to enforce under the [California state law] is identical to [the defendant's] duty under the FDCA)." Ultimately, the Court of Appeals affirmed the district court's dismissal of the plaintiff's claim because it was not plausible that the product's accurate net weight description was misleading. As the Court of Appeals explained, a reasonable consumer would know that some of the product would remain in the container. Id. at 965-66. As explained below, the same is true of L'Oreal's products.

The plaintiffs' claims are also preempted by the FPLA, which "supersede[s]" any state laws in the area of "net quantity" labeling that "require information different from" the FPLA's cosmetics labeling requirements. 15 U.S.C. § 1461. The FPLA does not include a similarly broad provision providing that a cosmetic will be deemed misbranded if it is "misleading in any particular." Rather, the FPLA requires that the "net quantity of contents (in terms of weight or mass, measure, or numerical count) shall be separately and accurately stated in a uniform location upon the principal display panel of that label." 15 U.S.C. § 1453(a)(2). The plaintiffs do not dispute that L'Oréal's products comply with the FPLA.

Moreover, the plaintiffs' assertion that they are seeking damages for past deception rather than different labeling is unavailing, because the damages that the plaintiffs seek are based on the allegation that L'Oréal did not provide labeling that would cure the allegedly deceptive nature of the packaging. Accordingly, the plaintiffs' claims are preempted.

---

Moreover, in its discussion of preemption, the Ninth Circuit Court of Appeals did not address the FPLA, which also preempts the plaintiffs' claims. See 15 U.S.C. § 1461. And unlike the FDCA, the FPLA contains no broad provision that a "cosmetic shall be deemed to be misbranded if its labeling is false or misleading in any particular." See 21 U.S.C. § 362(a). Accordingly, the plaintiffs' claims are independently preempted by the FPLA.

**B.**

Additionally, the plaintiffs have not pleaded plausibly that a reasonable consumer would be deceived by L'Oréal's products.

To determine whether a practice is materially deceptive or misleading, courts analyze whether the practice would be misleading to "a reasonable consumer acting reasonably under the circumstances." Podpeskar v. Dannon Co., Inc., No. 16cv8478, 2017 WL 6001845, at *3 (S.D.N.Y. Dec. 3, 2017) (quotation marks omitted). Although this issue may involve questions of fact, "courts may resolve the issue at the motion-to-dismiss stage, where the pleading does not plausibly allege that a reasonable consumer would be deceived." Id.

The plaintiffs attach photographs of the products to the SAC. The products are packaged so that the pump dispensers are visible to purchasers. See SAC ¶¶ 8-9; Def. Exs. A-D. It is undisputed that the products' labels correctly disclose the weight of the cosmetics inside. Products with pump dispensers proliferate the market for cosmetics. A reasonable consumer would know that a container that dispenses a viscous cosmetic through a pump will not dispense all of the cosmetic. Consumers are generally aware that they will not be able to extract every bit of product from such containers. This awareness is grounded both in common knowledge of pump dispensers and consumer

11

familiarity with viscous substances like soaps, shampoos, conditioners, toothpastes, lotions, sunscreen, hair gels, ointments, and other cosmetics and personal care products that a reasonable consumer would know to be viscous. See Hillen v. Blistex, Inc., No. 17cv2074, 2017 WL 2868997, at *3 (N.D. Ill. July 5, 2017) ("Indeed, as other courts have observed, consumers are generally aware that they may not be able to extract every bit of common products such as 'toothpaste, peanut butter, shampoo, and many other products' from their packaging." (citation omitted)). The plaintiffs' disappointment in L'Oréal's packaging design "does not establish deception, nor does it transform defendant's accurate labeling of the product's net weight into fraud by omission." See id.

Accordingly, the plaintiffs have not alleged plausibly that a reasonable consumer would be deceived by the products' packaging. For these same reasons, the plaintiffs have failed to establish a viable claim for relief, and the SAC is **dismissed.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent they are not specifically addressed, they are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss the SAC is **granted.** The Clerk is directed to enter Judgment dismissing the Second

Amended Complaint and closing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:** **New York, New York**
**July 11, 2019**

_____
John G. Koeltl
United States District Judge